No. 44,180

EDWARD J. ZELLER, *Appellee,* v. EDITH ZELLER, *Appellant.*

(407 P. 2d 478)

Opinion filed November 6, 1965.

*John J. Ziegelmeyer,* of Kansas City, and *Forrest A. Jackson,* of Lawrence, argued the cause, and were on the brief for the appellant.

*James L. Postma,* of Lawrence, argued the cause, and *Olin K. Petefish,* of Lawrence, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a divorce action filed by Edward J. Zeller, plaintiff (appellee), against his wife Edith, defendant (appellant), on the grounds of gross neglect of duty and extreme cruelty. The defendant answered and filed a cross petition for separate maintenance on the grounds of adultery, gross neglect of duty and extreme cruelty.

After a complete hearing, the trial court, on June 9, 1964, granted a divorce to the plaintiff; awarded the defendant alimony in the amount of $5,900, $2,300 of which was made payable in a lump sum and the remainder payable at $300 per month; and ordered the defendant to pay her indebtedness amounting to $2,300—$2,000 of which was incurred for psychiatric treatment at The Menninger Clinic during the pendency of the action. The only property accumulated by the parties during the marriage consisted of household goods and furnishings, which the parties divided to their mutual satisfaction, and the division was approved by the trial court. The defendant filed a motion for new trial, which was overruled. From this ruling defendant appeals.

The plaintiff is a professor of geology at the University of Kansas and is engaged in research on various government contracts. The defendant is a graduate student at the same university where she expects to earn a master's degree in anthropology and a doctor's degree in psychology.

At the time of the trial the plaintiff was thirty-eight years of age and the defendant was thirty-five years of age. The parties were married July 3, 1961, at Miami, Oklahoma. Each had been married once before. The plaintiff was divorced from his first wife in 1960. The defendant was divorced June 27, 1961, after nearly thirteen years of marriage. She has one child, Kyra, born May 29, 1961, from her prior marriage. As a part of the prior decree defendant's first husband was ordered to pay child support of $100 per month; however, the defendant has never seen fit to enforce the child support order. No children were born of the present marriage.

The parties began seeing each other during the defendant's separation from her first husband and prior to the birth of her child.

During this period the defendant received treatment from Dr. Bikales, a psychiatrist in Kansas City, and plaintiff had knowledge of this fact. Shortly after the parties' marriage they went to live in Switzerland. Trouble did not develop until after the first year of marriage. They returned to Lawrence in September 1962. In 1963 the defendant commenced treatment at The Menninger Clinic and also saw Dr. Bikales. The marriage relation continued to deteriorate and finally resulted in separation in September 1963.

Prior to the marriage of the parties the plaintiff acquired by inheritance or gift certain real estate in Washington, Nebraska and Illinois having an approximate value of $93,189. In addition, the plaintiff owned a Mercedes automobile valued at $2,000, a Cessna airplane worth about $4,500, and had cash on deposit with various banks totaling approximately $2,000, all of which were owned by the plaintiff prior to the marriage or acquired from income received by him from his real estate. On the other hand, the defendant owned no property prior to the marriage except some common stock from which she received $2,233.32 from the sale thereof. She used a portion of this money to live on during her courtship by the plaintiff, and shortly after her present marriage defendant gave the remaining $1,000 from the proceeds of the sale to her first husband.

The plaintiff's income in 1963 consisted of his salary from the University of Kansas in the amount of $11,250, income from his real estate of $5,487.02, and $3,449.94 from government research contracts.

The questions involved on appeal are adequately stated by the points raised by the defendant.

The defendant first contends the trial court erred in not requiring the plaintiff to pay child support for his stepchild. The trial court found the plaintiff should in no way be obligated for her support. Defendant's contention presupposes that the court possesses statutory authority to order payment of child support by a stepfather; for in the absence of a statute a stepfather has no obligation to provide for support of a stepchild. (*Smith v. Rogers, Ex'r.,* 24 Kan. 140.)

Defendant devotes her argument on this point to the proposition that under all of the circumstances of this case the trial court should have ordered the plaintiff to pay support for his stepchild pursuant to K. S. A. 60-1610 (*a*). Plaintiff, on the other hand, contends that the above-mentioned statute, and particularly the first sentence

thereof, does not authorize a trial court to order payment of support for a stepchild. The provisions of the mentioned statute, insofar as the same are pertinent to this issue, are:

"The court shall make provisions for the custody, support and education of the minor children, . . ."

whereas the prior statute (G. S. 1961 Supp., 60-1510) provided:

"When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, . . ."

The latter statute has been before this court on numerous occasions and it has consistently been held that the plain wording of the statute required a trial court in granting a divorce to make not only an order for custody of the minor children but *provisions for their support*. (*Grimes v. Grimes*, 179 Kan. 340, 295 P. 2d 646.) There was nothing in the statute requiring that an order be made for support of stepchildren; the duty of support extended only to "minor children of the marriage" in the plain wording of the statute.

It is noted that in the first sentence of K. S. A. 60-1610 (*a*) the legislature saw fit to omit the words "of the marriage" as found in G. S. 1961 Supp., 60-1510. Does the deletion of these words compel a judicial pronouncement that it is now mandatory under K. S. A. 60-1610 (*a*) that a trial court, in granting a divorce, make an order providing for support of a stepchild of the parties? We think not.

Defendant argues that the second sentence of K. S. A. 60-1610 (*a*), which provides:

"In connection with any decree under this article, the court may set apart such portion of the property of either the husband or the wife, or both of them, as may seem necessary and proper for the support of all of the minor children of the parties, or of either of them."

indicates a legislative intent that the words "of the minor children of the parties, or of either of them" should apply to the first sentence of the statute requiring the court to make provisions for the custody, support and education "of the minor children." The answer to such an argument is that the addition of the words to the second sentence and their omission in the first sentence make even stronger the positive nature of the first sentence to the effect that the trial court is obligated to make provisions only for the minor children of the marriage. To say that the statute requires that stepchildren be included in a support order would necessitate the addition of words that have been obviously omitted. Had the legislature in-

tended that stepchildren be included in the first sentence, the words "of the parties, or either of them," or words of similar import, could easily have been added. After examining other sections of chapter 60, article 16, we note the omission of such words. For example, see K. S. A. 60-1606.

Our holding that the first sentence of K. S. A. 60-1610 (*a*) does not authorize a trial court to require a stepfather to provide support is sound when measured by the difference in the common-law obligation of a natural father and stepfather to support a child. A natural father has a common-law duty to provide for support of his minor children. (*Grimes v. Grimes,* 179 Kan. 340, 295 P. 2d 646.) This duty, as well as the plain language of G. S. 1961 Supp., 60-1510, made mandatory the requirement that a trial court make provision for support of the minor children of the marriage. In the case of a stepfather, however, there was no duty of support imposed by the common law (*Smith v. Rogers, Ex'r.,* supra; 39 Am. Jur., Parent and Child, § 62, p. 699); any contribution by him to a stepchild was voluntary in law and he could withdraw his support at any time. (*Thomas v. Bone,* 191 Kan. 453, 381 P. 2d 373.)

Thus we conclude that the trial court did not err in failing to require the plaintiff to pay support for the stepchild, Kyra, for the reason that the court had no authority under K. S. A. 60-1610 (*a*) to make such an order.

Although several of the points raised by the defendant on appeal are overlapping in nature, it appears that she next contends the court erred in refusing to consider her evidence in support of her answer to the plaintiff's petition and her cross petition for separate maintenance, and further, that the court erred in not finding that the plaintiff had committed adultery.

The trial court, as part of its memorandum decree, said:

"Before detailing any of the facts upon which the parties predicate their respective claims of marital fault on the part of the other it should be remembered that if the evidence warrants the conclusion that a divorce should be granted because of the defendant's fault, it will be unnecessary to consider whether or not defendant is entitled to a decree of separate maintenance. . . ."

That portion of appellant's argument to the effect that the trial court refused to consider her evidence in support of her cross petition for separate maintenance completely overlooks the fact that a divorce action is entirely different from an action for separate maintenance.

In *King v. King*, 185 Kan. 742, 347 P. 2d 381, this court said:

"An action for alimony, separate maintenance and property division pursuant to G. S. 1949, 60-1516, is an entirely different cause of action from one of divorce." (Syl. ¶ 2.)

A divorce, if granted, completely dissolves the marriage relation; whereas a decree of separate maintenance permits the continuation of the relation in a legal sense. When the trial court, after considering and weighing all of the evidence in this case, found that the plaintiff was entitled to a divorce, it had no reason to give consideration to the defendant's evidence so far as her evidence pertained to her cross petition for separate maintenance. The granting of a divorce to one party precludes the granting of separate maintenance to the other.

We note from defendant's brief that she does not seriously contend there was insufficient evidence for the trial court to find her at fault, but her chief complaint appears to be that the court failed to find that her husband committed adultery and thus should have been denied a divorce.

In order to establish adultery the proof must be clear, positive and satisfactory. (*Burke v. Burke*, 44 Kan. 307, 24 Pac. 466.) There was in the case at bar contradictory evidence concerning the defendant's allegations, and under the circumstances our holdings in *Preston v. Preston*, 193 Kan. 379, 381, 382, 394 P. 2d 43, are peculiarly applicable. There it was stated:

"Admittedly, the defendant's own testimony contradicts that of her husband in many respects. Furthermore, the record contains abundant evidence which, if credited by the trial court, would have supported a judgment awarding the defendant a divorce. However, it is not the function of this court to weigh conflicting evidence or to substitute its judgment for that of the judge by whom the case was tried. The reason underlying this salutary legal principle was well expressed in *Hoppe v. Hoppe*, 181 Kan. 428, 312 P. 2d 215, where the court said:

"'. . . An able and experienced trial judge heard and saw the parties. This advantage enabled him to judge more fairly and accurately the credibility and probative value of their testimony than this court can. Much weight is to be given to the findings of the trial court in cases of this kind. . . .' (p. 431.)

"On conflicting evidence, the trial court in the instant case determined that a divorce should be granted plaintiff on the basis of extreme cruelty. We cannot say, from a review of the record, that such decision was wholly lacking in evidentiary support. Accordingly, the trial court's determination must stand."

No useful purpose would be served in setting forth in detail the evidence of both parties concerning the alleged faults of each

other. We have carefully examined the record and there is ample, competent evidence to support the findings of the trial court. Under such circumstances, the finding that the defendant was at fault and plaintiff should be granted a divorce will not be disturbed.

Defendant next contends the court should have allowed additional alimony to her, but that in order to make any alimony award the trial court would have had to find either the plaintiff was at fault or the parties were at equal fault. As nearly as we can determine the defendant is saying that since the trial court found that she was at fault no alimony could be awarded to her.

Defendant bases her argument on decisions of this court arising under G. S. 1949, 60-1511, which held that alimony could not be awarded to a wife when a divorce was granted the husband for her fault. (See *Hendricks v. Hendricks*, 136 Kan. 69, 12 P. 2d 804; *Petty v. Petty*, 147 Kan. 342, 76 P. 2d 850; and *Hayn v. Hayn*, 162 Kan. 189, 175 P. 2d 127.)

The defendant argues that chapter 60, article 16, of the code of civil procedure in no way changed the holdings of the above cases. She bases her argument on the third sentence of K. S. A. 60-1606, which provides:

". . . If a decree of divorce, separate maintenance or annulment is denied other than for the equal fault of the parties the court may nevertheless make any of the orders authorized by this section [60-1610] for the benefit of the minor children of the parties or for the equitable division of the property of the parties."

She contends that the statute does not provide for the allowance of alimony when a divorce, separate maintenance or annulment is denied other than for the equal fault of the parties. A plain reading of the statute dispells the defendant's contention on this point. The third sentence of the statute presupposes that a decree of divorce, separate maintenance or annulment has been denied one of the parties only and that the other party has not sought affirmative relief by requesting a divorce, separate maintenance or annulment. This sentence has no application to a case such as here where a divorce has been granted to one of the parties. We therefore conclude that the third sentence of K. S. A. 60-1606 is not applicable where one party is granted a divorce, although the other party is denied separate maintenance.

In defendant's argument that the trial court could not award alimony under its findings against her as to fault, she completely

overlooks the force and impact of K. S. A. 60-1610, the pertinent portion of which provides:

"A decree in an action under this article may include orders on the following matters:

. . . . . . . . . . . . . .

"(c) *Maintenance.* The decree may award to either party an allowance for future support, denominated as alimony, in such amount as the court shall find to be fair, just and equitable under all of the circumstances. . . ."

Under this statute alimony may be awarded to a party irrespective of which party is found to be at fault.

Before we discuss the adequacy of the alimony award we shall consider defendant's last contention to the effect the court erred in not making a division of the property and in not ordering the plaintiff to pay the outstanding debts of the family. Our former statute, G. S. 1949, 60-1511, provided in part that when a divorce had been granted a husband because of the fault of the wife, the court should restore to her property owned by her before marriage or separately acquired by her after marriage. The statute also directed the court to make division of property acquired jointly by the parties during their marriage, regardless of where title rested, in such manner as might appear just and reasonable. Under the new code, however, K. S. A. 60-1610 (b) provides:

"The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in his own or her own right after marriage, or acquired by their joint efforts, in a just and reasonable manner, . . ."

The significant change in the law regarding division of property is that the court is no longer required to set aside to the wife the separate property which she brought to the marriage or acquired with her own funds after the marriage. The court now is given authority to divide all of the property owned by the parties, regardless of the source or manner in which acquired, in a just and reasonable manner.

In construing and applying that portion of G. S. 1949, 60-1511, which provided that if the divorce is granted by reason of the fault of the wife a trial court may make such division of property between the parties as shall appear just and reasonable, it has been the rule that an order for division of property will not be disturbed on appellate review unless it is made to affirmatively appear there was an abuse of judicial discretion by the trial court. (*Goetz v. Goetz,* 180 Kan. 569, 306 P. 2d 167; *Preston v. Preston,* supra.)

From the record in this case we fail to find that the trial court abused its discretion in its order relating to division of property.

In giving consideration to the adequacy of the alimony award, we recognize the numerous decisions of this court holding the trial court is vested with considerable judicial discretion in making an award of alimony where a divorce has been granted the wife because of the husband's fault, and absent manifest abuse thereof the judgment will not be disturbed on appeal. (*Meads v. Meads*, 182 Kan. 361, 320 P. 2d 830.) In discussing this rule, however, the court, in *Longo v. Longo*, 193 Kan. 386, 395 P. 2d 302, said:

"An allowance of alimony rests largely in the discretion of the district court, but it is a judicial discretion and such allowance is subject to review and correction if, under the circumstances of a particular case, it is clearly unreasonable, unjust and inadequate." (Syl. ¶ 1.)

In reviewing the record in this case, the evidence discloses that the only jointly acquired property during the marriage consisted of household goods and furnishings. The plaintiff's assets, comprised of real estate, an automobile, an airplane and cash, all totaling $101,689, were acquired prior to the marriage or from income received from his real estate. The only asset brought into the marriage by the defendant was $1,000 in cash, which she later gave to her first husband. The parties lived together approximately twenty-seven months. During 1963 prior to their separation the plaintiff paid $1,509 to The Menninger Clinic and Dr. Bikales for treatments for the defendant. Since their separation the defendant has incurred charges for psychiatric treatment at The Menninger Clinic in the sum of about $2,000, she has borrowed $200 from the Student Loan Fund for her school fees, and $100 from the Lawrence National Bank for other expenses. During the pendency of this action the plaintiff paid the defendant $3,063 as temporary alimony. The plaintiff had income totaling $20,176.96 for the year 1963.

The evidence further discloses that prior to the marriage the plaintiff was fully aware of the defendant's mental illness and the fact that she had undergone psychiatric treatment. It also appears that the defendant will require further treatment in the future.

After considering all of the evidence, including the ages of the parties, the duration of the marriage, the property owned by the parties, their present and future earning capacities and the defendant's need for further psychiatric treatment, we are of the opinion that the trial court abused its discretion in ordering the

defendant to pay the indebtedness due The Menninger Clinic, the Student Loan Fund and the local bank totaling $2,300. The district court's order, in effect, awarded the defendant net alimony of $3,600. Under all of the circumstances this sum was inadequate and unreasonable. The decree is therefore modified to the extent that the plaintiff is ordered to pay the defendant's indebtedness to The Menninger Clinic, the Student Loan Fund and the local bank; the defendant is awarded alimony in the sum of $5,900, of which amount $2,300 is ordered paid upon the filing of the mandate, and the remainder to be paid at the rate of $300 each month thereafter.

The judgment as modified is affirmed. It is so ordered.