Oᴛɪs A. Sᴀɪɴᴛ, *Appellee*, v. Mɪʟᴅʀᴇᴅ I. Sᴀɪɴᴛ, *Appellant.*

(411 P. 2d 683)

Opinion filed March 5, 1966.

*Don W. Noah,* of Beloit, argued the cause, and was on the brief for the appellant.

*Fred D. Swoyer,* of Belleville, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

Fᴏɴᴛʀᴏɴ, J.: This divorce action was commenced by Otis A. Saint against his wife, Mildred. Mrs. Saint filed an answer denying generally the charges made by her husband and alleging condonation. She filed, also, a cross petition for divorce which was later amended to one for separate maintenance.

After a full dress hearing, the trial court granted a divorce to the plaintiff husband (appellee) on the ground of extreme cruelty, denied separate maintenance to the defendant wife (appellant),

set aside to the wife all of her separately owned property, including government bonds, and awarded her the sum of $14,500.00 as alimony and division of property. All other property was awarded to the husband. The defendant has appealed from that judgment.

Several points are raised on appeal: (1) That plaintiff's evidence was insufficient to prove extreme cruelty, that it was not corroborated and that it established condonation; (2) that the court erred in denying separate maintenance to defendant; and (3) that the court abused its discretion in its division of property and award of alimony. We shall consider these points in due course.

The parties were married July 20, 1952, Mr. Saint for the second time, Mrs. Saint for the first. The bridegroom was a prosperous farmer, his wife a long time school teacher. Both were 51 years of age when married. On the date of their marriage, Mr. Saint owned three farms aggregating some 620 acres, together with tangible and intangible personal property of substantial value. Mrs. Saint brought little of material wealth to the marriage. No children were born to this union, but plaintiff has two adult children of his first marriage, both with homes of their own.

The record makes it clear that the course of true love did not long run smoothly, but the evidence was sharply conflicting as to where the primary blame rested. The trial court, in its wisdom, found that extreme cruelty had been established on the defendant's part, and we believe that its finding was warranted.

It is true that the defendant was not shown to have engaged in physical violence against her spouse but mistreatment of that nature is not essential to the existence of extreme cruelty. This court has often held that physical abuse is not required to meet the statutory requirement of extreme cruelty. (*Preston v. Preston,* 193 Kan. 379, 381, 394 P. 2d 43.) In *Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127, it was said:

". . . Extreme cruelty as contemplated by the divorce statute is no longer regarded as being limited to acts of physical violence. The modern and better considered cases have repudiated the ancient doctrine requiring physical violence as too low and sensual a view of the marriage relation. It is now generally held, and in this state it has long been the rule, that any unjustifiable and long practiced course of conduct by one spouse towards the other which utterly destroys the legitimate ends and objects of matrimony constitutes extreme cruelty though no physical or personal violence may be inflicted, or threatened. . . ." (p. 193.)

Although denied, there was evidence that repeatedly throughout her marriage the defendant became angered at her husband, on

which occasions it was her habit to retire to the basement, or her bedroom, there to pout and sulk for protracted periods; and that for days at a time she would refuse to speak to or communicate with her husband.

Without going into specific detail, we may say there was testimony which, if believed, disclosed a course of conduct on the defendant's part tending to disrupt domestic harmony and to destroy legitimate matrimonial objectives. We have often characterized such behavior as extreme cruelty within the purview of Kansas statutes governing divorce.

But Mrs. Saint maintains her husband's testimony was not corroborated. In this, we believe she is mistaken. The plaintiff's children both testified that on divers occasions their stepmother would stomp or stalk from the room and betake herself to the basement, where she would pout and sulk. While neither of these witnesses were able to confirm their father's evidence in all its details, minute corroboration was not essential to establish the validity of his case. In *Kelso v. Kelso,* 182 Kan. 665, 324 P. 2d 165, we held:

"The provisions of G. S. 1949, 60-1509, requiring that the testimony of a complaining spouse as to the delinquencies of the other, alleged as grounds for the divorce, be corroborated, do not require corroboration of each and every detail concerning which testimony has been given. The requirement of corroboration is met if there remains corroborated testimony of acts or conduct sufficient to justify a judgment for divorce." (Syl. ¶ 7.)

Applying the rule so well stated in Kelso, which we might add was recently reaffirmed in *Gardner v. Gardner,* 192 Kan. 529, 389 P. 2d 746, we have no difficulty in concluding there was sufficient corroborating evidence in this case.

We have scrutinized the record for evidence of condonation but find nothing from which it may even be inferred. The offensive conduct charged against Mrs. Saint extended over many years; it was continuous in nature. Yet the Saints managed to abide together for some twelve years, even though, as plaintiff testified, they may not have lived together as man and wife for the last several years and may even have occupied separate bedrooms. Their separation occurred only in July 1964, when Mr. Saint did not return to the family abode after a sojourn in the hospital and there is nothing in the record to suggest that they have lived together since that time.

It is generally held, where conduct embracing a series of cruelties or indignities is relied on as a basis for divorce, that continued cohabitation, as opposed to a resumption of cohabitation, does not

have the same significance as it does where adultery forms the basis of the action. (17 Am. Jur., Divorce and Separation, § 238, pp. 421-422; 32 A. L. R. 2d, Anno: Divorce—Cruelty—Condonation, §§ 8, 9, 10, pp. 127-133.)

In *Brown v. Brown,* 171 Kan. 249, 232 P. 2d 603, 32 A. L. R. 2d 102, this court considered the matter of condonation and said:

"The effect of voluntary cohabitation after acts of cruelty on the part of one spouse as evidencing condonation of the offense by the other stands upon a different basis than cohabitation after knowledge of adultery on the part of one spouse. Cruelty as a ground for divorce is generally a course of conduct rather than a single act. The rule is that sexual cohabitation after acts of cruelty cannot be considered as condonation in the sense in which it would be after an act of adultery. The effort to endure unkind treatment as long as possible is commendable; and it is obviously a just rule that the patient endurance by one spouse of the continuing ill treatment of the other should never be allowed to weaken his or her right to relief." (p. 252.)

It is also well settled in this jurisdiction that repetition of an offense after it has been condoned revives the original offense, and where acts of cruelty are repeated after a reconciliation, the former cruelties are given fresh vitality and may be considered in conjunction with the new ill-treatment. (*Goetz v. Goetz,* 180 Kan. 569, 576, 306 P. 2d 167; *Bremer v. Bremer,* 187 Kan. 225, 228, 356 P. 2d 672.)

There is nothing in the record to justify an assumption that Mr. Saint had forgiven his spouse for past mistreatment. Condonation is an affirmative defense to be established by a preponderance of evidence. (17 Am. Jur., Divorce and Separation, § 445, pp. 560-561.) Although Mrs. Saint raised this defense in her answer, she made no effort at the trial to establish condonation. Even her own testimony is silent on this point. Clearly, condonation has not been established.

The defendant next complains that she was not granted separate maintenance. The trial court specifically found defendant guilty of extreme cruelty and concluded that the plaintiff was entitled to a divorce. Having so found, there was nothing upon which a decree of separate maintenance could operate. An action for alimony or separate maintenance is an entirely different cause of action than one for divorce. (*King v. King,* 185 Kan. 742, 347 P. 2d 381.) We recently had occasion to consider this subject in *Zeller v. Zeller,* 195 Kan. 452, 407 P. 2d 478, where we said:

"A divorce, if granted, completely dissolves the marriage relation; whereas a decree of separate maintenance permits the continuation of the relation in a legal sense. When the trial court, after considering and weighing all of the

evidence in this case, found that the plaintiff was entitled to a divorce, it had no reason to give consideration to the defendant's evidence so far as her evidence pertained to her cross petition for separate maintenance. The granting of a divorce to one party precludes the granting of separate maintenance to the other." (p. 457.)

It may be conceded there was ample evidence on which the trial court might have found the issues in defendant's favor and awarded her separate maintenance. The court chose, however, to believe plaintiff's evidence. It is not our function to weigh conflicting evidence or substitute our judgment for that of the court which heard the case. Our task is to determine if the evidence be sufficient to support the findings and the judgment of the court. (*Preston v. Preston,* supra.)

The reason underlying this basic rule is well expressed in *Hoppe v. Hoppe,* 181 Kan. 428, 312 P. 2d 215, in these words:

". . . An able and experienced trial judge heard and saw the parties. This advantage enabled him to judge more fairly and accurately the credibility and probative value of their testimony than this court can. Much weight is to be given to the findings of the trial court in cases of this kind. . . ." (p. 431.)

We can but add that, on appeal, this court has before it only the bald, barefaced and unadorned printed page, ungraced by the many nuances which assist the trier of the facts in assessing the credibility and trustworthiness of the witnesses: the tone of voice, the facial expression, the forthrightness of demeanor, the inflection of speech, the clearness of eye, and many others, all of which are imprinted upon the screen of consciousness, leaving their indelible image.

Whether members of this court would have granted separate maintenance to the defendant, rather than a divorce to the plaintiff, is wholly irrelevant. The trial court, on the ground floor, determined that issue in plaintiff's favor and the record supports its decision.

The defendant finally contends that the lower court abused its discretion in alimony and property matters. It has been our fixed rule that the division of property and the allowance of alimony rests within the sound discretion of the trial court and that its judgment will not be disturbed unless there has been a clear abuse of discretion. (*Henry v. Henry,* 171 Kan. 307, 232 P. 2d 473; *Meads v. Meads,* 182 Kan. 361, 320 P. 2d 830; *Preston v. Preston,* supra.) These cases were decided under the provisions of the old code, G. S. 1949, 60-1511, but we have held the same principle equally applicable to cases arising under the new Code of Civil Procedure,

K. S. A. 60-1610 (*b*) and (*c*), which actually broadens the power of a trial court in areas pertaining to property division and alimony. (*Zeller v. Zeller,* supra.)

In Zeller, we noted certain factors which might be considered in achieving a just result in the division of property and computation of alimony. Today, we also hold that the question of fault may be taken into account. (*Moran v. Moran,* 196 Kan. 380, 411 P. 2d 677.) Additional factors might suggest themselves such as the time, source and manner of the acquisition of property, and family ties and obligations.

Turning to the present case, the record reveals that while the plaintiff is a man of means, by far the greater part of his property was accumulated during his prior marriage. According to his own estimate, the plaintiff was worth some $85,000.00 in 1952, over half his wealth being in land, and approximately $113,000.00 in 1964. The appreciation in his net worth from the date of marriage to date of divorce would thus amount to about $28,000.00. This appreciation would be somewhat greater were it to be computed on the basis of land values given by other witnesses, although it would not be possible to ascertain from this record how much greater it might be.

The plaintiff's yearly income since the marriage has fluctuated between $839.70 in 1956 and $7,477.94 in 1952, averaging some $6,200.00 during the past five years. He is now in poor health, having had one heart attack in 1959, and a second in July 1964. The defendant has teacher's retirement of $76.00 per month and an annuity paying $86.00 monthly on which the plaintiff has paid $2,300.00.

It was against this background that the trial court set over to Mrs. Saint her personal property, including a deep freeze and television set; gave her the bonds worth $3,150.00 (bought from annuity payments); and awarded her $14,500.00, payable in 60 days.

Under the circumstances, we are not disposed to say that the trial court abused its discretion, even though the provisions made for the defendant might be termed ungenerous by many persons. The alimony award, standing alone, amounts to a substantial portion of the property accumulated during marriage, including appreciation in land values. Other permissible factors were doubtless taken into account by the court.

No good purpose would be served by going into greater detail. We have examined the many figures set out in the record and, while the amount awarded to the defendant seems small when compared to the plaintiff's present worth, we cannot say there has been an affirmative showing of abuse of discretion.

No error having been made to appear, the judgment of the court below is affirmed.