No. 44,551

Rita Clugston, *Appellee*, v. Charles Clugston, *Appellant*.

(415 P. 2d 226)

Opinion filed June 11, 1966.

*Perry Owsley*, of Pittsburg, argued the cause and was on the briefs for appellant.

*Keith R. Jones*, of Pittsburg, argued the cause, and was on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: This was a divorce action commenced by Rita Clugston against her husband Charles. The husband filed an answer denying generally the allegations of the wife, and a cross petition for a divorce. Each party charged the other with extreme cruelty and gross neglect of duty. After a full hearing, the district court found the parties equally at fault, and granted a divorce on the grounds of extreme cruelty and gross neglect of duty. The defendant appeals, challenging the district court's division of property and award of alimony made pursuant to K. S. A. 60-1610 (*b*) and (*c*).

The parties had been married for 24 years and have two sons; Charles A. Clugston, now 23 years of age and married, and Scott Clugston, 19 years of age and now living at home with the plaintiff. Scott is a sophomore at Kansas State College of Pittsburg, has part-time employment and earns $40 per week. Neither party questions the provisions of the decree relating to Scott's care and maintenance.

The record shows the defendant has been employed since 1941

by the Kansas City Southern Railroad. At the time of the trial, he was employed as a railroad engineer with about twenty-five years service, and barring an accident or illness, had approximately eighteen years to work before retirement. His gross income was about $10,000 per year and his net take-home pay was $8,800. He contributed the maximum amount to the retirement fund, but was unaware of the amount he would receive upon retirement; however, he would receive maximum retirement.

At the time of the divorce, the plaintiff was 41 years of age and the evidence tended to show that due to a nervous condition and migraine headaches she was physically unable to work. The district court found she was unemployed and had been unable to secure employment since the parties' separation. Twice during the marriage, plaintiff had been briefly employed. Her income and its source included: $646.74 from National Gypsum Company in 1951, $2,862 from Helene Curtis Industries, Inc. in 1961, and $360 received from the government for attending a special business course. It was stipulated the plaintiff's income, totaling $3,868.74, was contributed to accumulate property of the marriage and the maintenance of the home.

While the parties' assets were not extensive, their financial condition may be described as good due to the absence of outstanding fixed obligations. On the basis of the testimony, the district court awarded the plaintiff the house and real property together with the household furnishings of the value of $7,000; the 1960 Pontiac automobile of the value of $900, and the shares of stock together with other interest in land and mineral rights in Puerto Rico of the approximate value of $900. Defendant was awarded the United States savings bonds in the sum of $1,100; personal property located at the home including ladder, tools, lumber, camera, screen and projector, each of unknown value; savings in the Kansas City Southern Credit Union in the sum of $1,123.60; bank and Christmas savings accounts in the amount of $454; a 1956 Chevrolet automobile of the value of $400 and a 1961 Volkswagen automobile of the value of $800. The only other portion of the district court's judgment here pertinent is its order requiring the defendant to pay as alimony for plaintiff's future support the gross sum of $29,400, payable at the rate of $200 per month for 12 months, and $150 per month for 180 months thereafter.

At the outset, we note neither party questions the district court's statutory authority to use its discretion in granting a divorce, a

division of the property or alimony where both parties are found to be at equal fault. (K. S. A. 60-1606.) In passing, it is noted the statute invests the district court with that authority.

Defendant contends the district court abused its discretion and erred in its division of property accumulated during the marriage, and in awarding the plaintiff alimony for future support in the amount of $29,400.

It would serve no useful purpose to detail the evidence as to which party purchased each individual asset. The decree set forth the property owned by the parties and the disposition made of it. On its face, the decree would seem to be an equitable division of the property of the parties. In an action of this kind, K. S. A. 60-1610 provides that the decree may include orders on the following matters:

"(*b*) *Division of property.* The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in his or her own right after marriage, or acquired by their joint efforts, in a just and reasonable manner. . . ."

As indicated, we have no rule of law, statutory or otherwise, for determining what proportion of the property is allotted to the individual parties (*Preston v. Preston,* 193 Kan. 379, 384, 394 P. 2d 43), nor is it the prerogative of this court to divide property between husband and wife. Its proper and sole function is to review the record for the purpose of determining whether the district court's findings have a factual basis in the evidence and whether its discretion with respect to such a division has been abused. (*Goetz v. Goetz,* 180 Kan. 569, 578, 306 P. 2d 167; *Darr v. Darr,* 194 Kan. 593, 595, 400 P. 2d 721; *Zeller v. Zeller,* 195 Kan. 452, 459, 407 P. 2d 478; *Saint v. Saint,* 196 Kan. 330, 411 P. 2d 683.) In the Zeller case, *supra,* it was held:

"An order for division of property under K. S. A. 60-1610 (*b*) will not be disturbed on appellate review unless it is made to affirmatively appear that there was an abuse of judicial discretion by the trial court." (Syl. ¶ 7.)

Nothing would be gained to extend this opinion on this phase of the case. It is sufficient to say we have carefully studied the record and based on the facts and circumstances disclosed, we conclude the defendant has failed to affirmatively show the district court's division of the property between the parties was unjust or unreasonable, amounting to a clear abuse of judicial discretion, and we approve its judgment relating to the division of property.

The defendant vigorously attacks the district court's award of

alimony for the plaintiff's future support, contending it is neither fair, just nor equitable, and that he should not be burdened with supporting the plaintiff for the rest of his life. He directs our attention to *Darr v. Darr*, supra, and asserts the facts there are very similar to the facts in the case at bar. While there are facts and circumstances in the *Darr* case similar to the instant case, it is distinguishable on the basis that the wife's income and needs and facts hereafter noted are completely different. In the *Darr* case the wife was employed and had monthly take-home pay of $203; here, the wife was unemployed and unable to secure employment and there was evidence she was physically unable to work. Moreover, considerable indebtedness had been incurred by the parties in the *Darr* case and the husband's ability to make payments was questionable; here, there was no family indebtedness which the defendant was required to pay. In addition, the wife in the *Darr* case was awarded *permanent* alimony which was required to be paid irrespective of any future change in circumstances; here, the wife was awarded alimony for her future support which is not considered permanent since the award may be modified pursuant to K. S. A. 60-1610 (*c*).

In *Moran v. Moran*, 196 Kan. 380, 411 P. 2d 677, changes brought about by the enactment of K. S. A. 60-1610 (*c*) were explained and it was said:

". . . A plain reading of the statute indicates that its terms are to be invoked when one party's needs and the other party's ability to pay are such that support should be ordered. The trial court is possessed of considerable judicial discretion in making an award of alimony which is fair, just and equitable under all the circumstances, and absent manifest abuse thereof, its judgment will not be disturbed on appeal. If alimony is awarded at the time of the decree, future changes in the circumstances of the parties may be considered at the appropriate time, for under the statute the court retains jurisdiction to modify the amounts or conditions for payment of that porion which has not become due as long as it does not have the effect of increasing or accelerating the liability beyond that originally prescribed." (l. c. 386.)

In his work, Kansas Code of Civil Procedure, Judge Gard noted that considerable changes were made in the new statute, and stated:

". . . This provision puts the court in the position of being able to reduce or eliminate altogether the payments of alimony where there has been a change in the financial circumstances of the parties, or their remarriage or death." (p. 733.)

In attempting to bring the instant case within the factual situation of *Darr*, the defendant argues that the plaintiff is a graduate of the Cosmetology School at Kansas State College of Pittsburg and is

capable of earning $350 to $400 per month—a sum not disclosed by the record. As indicated, the district court found the plaintiff was unemployed and unable to secure employment and there was evidence tending to show she was physically unable to work. It is apparent that, based upon an eight-months' work experience in 1961, the district court did not engage in conjecture or speculation of the future earning capacity of the plaintiff. It observed the parties and heard their testimony and was required to weigh the evidence, and we cannot say it erred in failing to find what, if any, plaintiff's future earning capacity might be.

The defendant next contends that the alimony awarded shackles his future income with a fixed burden and is an abuse of judicial discretion in view of the finding the parties stood before the court in equal fault. This point is not well taken. We have held that alimony may be awarded to a party irrespective of fault (*Zeller v. Zeller*, supra, p. 459), and to a wife even though she is not the innocent party (*Moran v. Moran*, supra, Syl. ¶ 3).

There is no established rule for deciding what proportion of the husband's estate should be allowed as alimony. The requirement of the statute is that the allowance be "fair, just and equitable," and the amount determined in the light of the circumstances which exist in each individual case. (*Preston v. Preston*, supra.) When consideration is given to the record and to the various factors heretofore suggested in the cases of *Darr, Preston, Saint* and *Moran*, for determining whether an award of alimony is fair, just and equitable, such as the age of the parties, the number of years they were married, their present and future earning capacities, the fact that a son was in college at the time of the divorce and lived with the plaintiff, the mental and physical health of the plaintiff, that there was no family indebtedness, and the fact that upon retirement the defendant would receive maximum benefits, none of which would be received by the plaintiff, compels the conclusion that the amount awarded the plaintiff is not excessive, and we cannot say there has been an affirmative showing of abuse of discretion.

The judgment is affirmed.

SCHROEDER, J., dissenting: Throughout the history of our country, and western civilization as we know it, it has been the policy of duly constituted governments to encourage the preservation of the marriage relationship between husband and wife. The family has been recognized as the fundamental unit in a democratic society, and its preservation is in the interest of freedom loving people.

The approval of an alimony award in the total sum of $29,400 to the wife on the facts in this case, where the parties are in equal fault, tends only to encourage divorce and make it profitable for the wife. The mere fact that alimony can now be changed as future conditions may require, so long as it does not have the effect of increasing or accelerating the liability beyond that originally prescribed, is a poor excuse for making an alimony award unreasonably high in the first instance.

Where parties seek a divorce they are not preserving a home, *they are breaking it up.* People should be forced to realize this, and no party to a divorce action should be encouraged by a law which tends to protect one at fault to retain the same comforts of the home to which he or she was accustomed during the marriage as a result of the *joint efforts* of both the husband and wife.

The wife in this case is 41 years of age and is educated and trained in cosmetology. She is capable of earning sufficient income for a comfortable livelihood. Frailties of human nature being what they are, courts should not administer laws in such a way that they encourage a wife in a divorce action to remain idle pending the final determination of the divorce action, or to remain idle at the expense of the husband because the sum of alimony awarded is so large that it tends to encourage such conduct. At the turn of the century the woman's place was said to be in the home, but today it is commonplace for a married woman to work regularly at gainful employment. And after working at gainful employment, she is eligible for unemployment compensation just the same as men.

The case of *Darr v. Darr*, 194 Kan. 593, 400 P. 2d 721, is so similar to the instant case that it suggests the alimony award herein is unduly excessive. There a $17,400 alimony judgment was reduced $5,000 and made payable at the rate of $150 per month instead of $200 per month. Accordingly, in my opinion, the alimony award should be reduced by $15,000 and made payable at the rate of $150 per month.