No. 45,377 and No. 45,583

J. BERNICE COOL, *Appellant*, v. HOWARD R. COOL, *Appellee*.

(457 P. 2d 60)

Opinion filed July 17, 1969.

*Walter F. McGinnis,* of El Dorado, argued the cause, and *Allyn M. McGinnis,* of El Dorado, was with him on the brief for the appellant.

*Warren Ralston,* of El Dorado, argued the cause, and *O. J. Connell, Jr.,* of El Dorado, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: These two consolidated cases mark the end of a marriage spanning over four decades. Case No. 45,377 is the original divorce action instituted by plaintiff J. Bernice Cool against defendant Howard R. Cool, each charging the other with extreme cruelty and gross neglect of duty. On June 21, 1967, the district court granted both parties a divorce, equally divided property valued at approximately $50,707.61, but refused to grant plaintiff alimony. After denial of plaintiff's various posttrial motions, she perfected her appeal. Case No. 45,583 is merely an outgrowth of the divorce action in which plaintiff appeals from an order denying her motion to set aside the judgment on the ground of fraud, and will be discussed later in the opinion.

The parties were married December 10, 1921, and except for a short separation followed by a divorce and remarriage in 1939, lived together until plaintiff filed her petition on November 29, 1966. Two sons were born of the union. Both are now adults. One of them, following the death of his wife in 1956, moved back into the home of his parents with his young daughter, where they lived together for approximately nine years. Domestic strife was present throughout most of the marriage and finally culminated in these proceedings.

At the time of the divorce plaintiff was sixty-three years of age, had undergone two operations for cancer, and was unable to be gainfully employed. She received $36.80 per month from social security; and since the divorce, a small rental income from a converted garage located near the residence. Defendant was sixty-five years of age, was a blacksmith by trade, and operated his own shop where he also made loading chutes, fence panels, feed troughs and bunks for sale. He was receiving $83 per month in social security payments.

For purposes of trial, the court appointed appraisers to value various properties, including real estate accumulated by the parties

during the marriage. The home and converted garage were appraised at $8,500. The rental unit, when utilized, brought in $60 per month, less utilities, which were paid by the landlord. The parties also owned property west of El Dorado on Highway 196, consisting of approximately seven acres on which the blacksmith shop, and a house trailer occupied by defendant since the separation, were located. This piece of real estate was valued at $37,500; the house trailer was appraised at $350; the building where the blacksmith shop was located at $250; shop equipment and supplies at $825; and two horses at $100. Several automobiles of rather nominal value were also included.

The trial court awarded plaintiff the residential real estate, including the rental unit; household goods valued at $500; a 1960 Chevrolet; and a savings and loan account of $2,611.63. Defendant was awarded the trailer home, blacksmith shop and equipment, horses, two automobiles—a 1956 Ford valued at $40, and a 1959 pickup—plus a savings and loan account in the amount of $3,031. The seven-acre tract on the highway was apportioned between the parties in such a manner that the realty and personalty set over to each was of the approximate value of $25,353.80.

After the court expressed serious reservation about awarding plaintiff any alimony because defendant was "apparently retired or in the process of retiring," a separate hearing was ordered on that question alone, at which evidence was adduced by both sides. The testimony was sharply conflicting regarding the extent of defendant's work and activity in the blacksmith shop. Income tax returns for the past several years were produced, and plaintiff indicated that they reflected only income received by defendant in the form of checks, and that he accounted for no cash received in the course of his business. Plaintiff insisted that from 1960 through 1965 defendant's average annual income from the business was slightly in excess of $6,000; but it is not clear from the record whether this figure represented gross or net income. She did admit there had been a decrease in business over the years, and for that matter, the shop was closed during several periods.

On June 16, 1967, the court rendered a memorandum decision by letter, a part of which is as follows:

"The defendant is a man 65 years of age and is presently drawing $83 a month from Social Security; that the tax return filed by both parties to this action indicated a net income for the year of 1965 of $2,547.58, for his work

as a Blacksmith. The year 1966 shows a gross income of $1,116.30, plus $225, which has failed to be reported as being received during the year of 1966; that is his income to date with the exception for the year of 1967, which is $116, as shown by the evidence submitted.

"It would appear to the Court that for the past two and a half years this man has not been making a lage amount of money in his Blacksmith work and that receipts from the same continue to decrease. The Court further observes that Mr. Cool appears to be a man that is beginning to loose his coordination and questions how long he can continue to be engaged in this type of work in the future. . . ."

The contents of the memorandum concerning the granting of a divorce, division of property, and alimony was reduced to a journal entry filed June 21, 1967. Thereafter, plaintiff filed motions for a new trial and to alter or amend the judgment. Evidence in support of the motions was introduced by plaintiff tending to show that defendant was continuing to operate the business as in the past. Defendant, on the other hand, stoutly contended he had curtailed his activities at the shop, particularly the shodding of horses, which in earlier times had been a substantial source of his income. The motions were overruled.

Plaintiff urges that she alone should have been granted the divorce and to that extent the decision was contrary to the evidence. We cannot agree. She raises no question concerning possible lack of corroboration of defendant's alleged grievances against her. The essence of her argument, as we view it, is that we should reweigh the evidence and arrive at a conclusion different from that reached by the trial court. This, of course, overlooks our long-standing rule that the trial judge has the duty to determine the weight and credibility to be given to the testimony of the witnesses; and on appellate review, findings or a judgment will not be overturned for insufficiency of evidence where there is substantial, competent evidence to support them. (1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error §§ 506, 507.) Admittedly, plaintiff's own testimony contradicts that of her husband in many respects; however, it is not the function of this court to weigh conflicting evidence or substitute its judgment for that of the experienced trial judge before whom the case was tried. (*Haynes v. Haynes,* 202 Kan. 83, 446 P. 2d 749; *Saint v. Saint,* 196 Kan. 330, 411 P. 2d 683; *Zeller v. Zeller,* 195 Kan. 452, 407 P. 2d 478; *Preston v. Preston,* 193 Kan. 379, 394 P. 2d 43.) Nothing of value would be added to the annals of law in this state by our detailing the evidence about the discordant marriage and the behavior of each party which made their con-

tinued relationship as husband and wife intolerable. There was substantial evidence which, if believed by the trial judge, supported his finding that each of the parties was at fault (*Greene v. Greene*, 201 Kan. 701, 443 P. 2d 263; *Clugston v. Clugston*, 197 Kan. 180, 415 P. 2d 226) and that defendant was entitled to a divorce from plaintiff on the grounds of extreme cruelty and gross neglect of duty. (See, *Haynes v. Haynes*, supra, and authorities therein cited.)

Likewise, we find no merit in plaintiff's contention that the court erred in the division of property. Plaintiff's principal quarrel is in respect to certain items of personalty which she contends were either undervalued or completely ignored by the court. The division of property made by the trial court in a divorce proceeding will not be set aside in the absence of a clear abuse of discretion. (*Clugston v. Clugston*, supra; *Zeller v. Zeller*, supra; *Preston v. Preston*, supra.) Here, the court, with the parties' consent, sought the aid of appraisers in determining the values of the properties. Plaintiff offered no evidence concerning the value of certain items about which she now complains. Further, at the posttrial hearings there appeared to be some question about whether defendant actually owned several articles of personalty located on the premises of the blacksmith shop. The experienced trial judge is in a much better position than this court to determine these matters. After carefully examining the lengthy, but confusing, record, we have concluded that plaintiff has failed to produce anything of substance that, in our opinion, would warrant the setting aside of the court's order dividing the property.

Finally, plaintiff complains bitterly because the court failed to award her any alimony. Again we are faced with our fixed rule that in matters concerning the awarding of alimony to a party in a divorce action, the court is vested with considerable judicial discretion, and its order will not be set aside or vacated in the absence of a clear showing of an abuse of that discretion. (*Moran v. Moran*, 196 Kan. 380, 411 P. 2d 677; *Saint v. Saint*, supra; *Zeller v. Zeller*, supra.) There is no fixed rule for determining what proportion of a husband's estate should be allowed as alimony. The statute, K. S. A. [now 1968 Supp.] 60-1610 (*c*), merely requires that the allowance be "fair, just and equitable," and the amount determined in the light of circumstances which exist in each case. (*Clugston v. Clugston*, supra; *Preston v. Preston*, supra.) No longer is it mandatory, as it was under G. S. 1949,

60-1511, that alimony be allowed to a wife when she is granted a divorce for the husband's fault. In *Moran v. Moran,* supra, we said:

". . . A plain reading of the statue [60-1610 (*c*)] indicates that its terms are to be invoked when one party's needs and the other party's ability to pay are such that support should be ordered. The trial court is possessed of considerable judicial discretion in making an award of alimony which is fair, just and equitable under all the circumstances, and absent manifest abuse thereof, its judgment will not be disturbed on appeal. . . ." (p. 386.)

We have made clear the many factors that may be considered in determining what amount of alimony, if any, should be ordered, such as the ages of the parties, duration of the marriage, the property owned by the parties, their respective and future earning capacities; and the question of fault may also be taken into account. (*Saint v. Saint,* supra; *Zeller v. Zeller,* supra.)

We find throughout these proceedings frequent references by the trial judge to the ages of the parties and his misgivings about the ability of the defendant to pay alimony to his wife. For want of better evidence, we must take the court's determination of the husband's annual income from the operation of the blacksmith shop, as reflected from income tax returns, which are not included in the record before us. There was testimony that there had been a decline in defendant's business and, in particular, his activity in shodding horses. Evidence relating to defendant's physical condition disclosed he had had his driver's license revoked because of epilepsy, for which he was taking medicine. He stated his doctor told him not to do heavy work; that he had quit horseshoeing about a year and a half ago because he was physically unable to do so; and he had not had his business open during the months of January and February 1967. Also, there was a statement from his doctor that he had a "moderate amount of emotional stress." Plaintiff made no attempt by medical or expert testimony to refute any of defendant's evidence that he was "slowing down." She and her son merely stated he was, in effect, carrying on business as usual. The fact remains that defendant was reaching what would be considered retirement age, and common sense would indicate a person's stamina and ability to work would be on the decline. A matter not to be overlooked is that plaintiff was awarded property valued at approximately $25,000, including a part of the highway real estate, which, because of its location, was subject to appreciation in value. In addition, she will receive the rental income from the converted

garage. These factors, as well as many others, including the finding that the parties were equally at fault, undoubtedly were taken into account by the court.

Under all the circumstances, whether we would have made the same determination as the trial judge is irrelevant. Nevertheless, we are not disposed to hold that the court exceeded the bounds of its judicial discretion in denying plaintiff any alimony.

The sequel to the divorce action is found in case No. 45,583, wherein plaintiff, pursuant to K. S. A. 60-260 (*b*), filed a motion on June 17, 1968, to set aside the earlier judgment, in which she was denied alimony, on the ground of fraud because of alleged perjury committed by defendant. Specifically, she alleged defendant failed to account for his income for the years 1966 and 1967, and that instead of retiring from business and being unable to work, he had continued his business and "continues to shoe horses regularly." After a hearing on the motion July 1, 1968, at which plaintiff offered evidence by several witnesses, the motion was denied.

Under our former statute (G. S. 1949, 60-3007) the giving of false testimony, standing alone and unaccompanied by other acts or conduct of an extrinsic or collateral nature, constituted intrinsic fraud and ordinarily afforded no ground for equitable relief (*e. g., Mathey v. Mathey,* 179 Kan. 284, 294 P. 2d 202; *Plaster Co. v. Blue Rapids Township,* 81 Kan. 731, 106 Pac. 1079). K. S. A. 60-260 (*b*), however, follows the federal rule in that it abolishes the troublesome distinction between intrinsic and extrinsic fraud, so that now a judgment may be attacked within one year on the ground of fraud, whether the fraud is denominated intrinsic or extrinsic. (Gard, Kansas Code of Civil Procedure § 60-260 [*b*].)

The burden of proving fraud or misrepresentation in obtaining a judgment is on the movant; fraud is never presumed but must ordinarily be proven by clear and convincing evidence. In determining whether the burden has been met, it becomes the duty of the trial court to weigh the evidence and determine the credibility of the witnesses. (*Donaldson v. Donaldson,* 199 Kan. 469, 430 P. 2d 210.) In commenting on the federal rule, the New Jersey supreme court, in *Shammas v. Shammas,* 9 N. J. 321, 88 A. 2d 204, speaking through Judge (now Justice) Brennan, said:

". . . [W]e hold that relief for fraud upon the court may be allowed under our rule whether the fraud charged is denominated intrinsic or extrinsic. The notion that repeated retrials of cases may be expected to follow the setting

aside of judgments rendered on false testimony will not withstand critical analysis. . . . And, in any event, a court may not set aside a final judgment merely because some testimony is perjured. All perjury is an affront to the dignity of the court and to the integrity of the judicial process, but the law is not without other effective means to punish the perpetrator of the crime. . . . *Prejured testimony that warrants disturbance of a final judgment must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been willfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result.* Further, a party seeking to be relieved from the judgment must show that the fact of the falsity of the testimony could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is in all circumstances not a bar to relief . . . Clearly, the necessity to satisfy these tests before the judgment may be disturbed is itself a deterrent to repeated litigation of the same factual issues. . . ." (pp. 329, 330.) (Emphasis added.)

(See, 3 Barron and Holtzoff, Federal Practice and Procedure § 1326.)

In an effort to sustain her claim of fraud, plaintiff, by her evidence, sought to establish that because defendant continued to operate his blacksmith shop *after* the separation and divorce, he perjured himself by testifying in the various proceedings in divorce that he was not going to be able to run his business and "was retiring" because of health and other reasons. While it is true there was some evidence that defendant continued to work and carry on his business much as he had before, there was also evidence that his business had declined. For example, his activity in shodding horses was described by Mr. Poe, one of his clients, "I have another horseshoer that shoes the rougher horses . . . [H]e [defendant] told me he quit and it takes a little begging for him to do it occasionally."

We are confronted here with what is, in effect, a negative finding by the trial court which normally will not be set aside on appellate review. (*In re Estate of Countryman,* 203 Kan. 731, 457 P. 2d 53; *Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1.) After examining the record and the evidence which is too voluminous to narrate, we are of the opinion the trial court properly denied the motion for the reason plaintiff failed to sustain the burden of proof by clear and convincing evidence, and thus warrant the relief sought.

The judgments of the lower court in both cases are affirmed.