No. 50,527

In the Matter of the Estate of Lloyd W. Davis, Deceased.

James D. Davis, Executor of the Estate of Ida C. Davis, *Claimant-Appellant,* v. Ruth I. Nelson, Executrix of the Estate of Lloyd W. Davis, Deceased, *Respondent-Appellee.*

(610 P.2d 587)

Opinion filed May 10, 1980.

*Don W. Noah,* of Noah & Harrison, P.A., of Beloit, argued the cause and was on the brief for the claimant-appellant.

*Fred Swoyer,* of Swoyer & Simms, of Belleville, argued the cause and was on the brief for the respondent-appellee.

The opinion of the court was delivered by

Fromme, J.: This appeal is from an order disallowing a claim against the estate of a deceased husband for support of his wife during a period of separation which preceded the husband's death.

The facts leading to the claim are not in dispute. Ida C. and Lloyd W. Davis were married at Belleville, Kansas, on August 31, 1904. They accumulated real and personal property during the course of their marriage. Five children were born to the marriage—Ruth Nelson, Leona Van Vleet, Lloyd Wesley Davis, James Davis and Lauren Davis. The marriage went well between Ida and Lloyd until 1966. Their difficulties can be traced to a controversy among the children over the property accumulated by the parents.

Lloyd, being of an advanced age, made substantial gifts of real estate and money to three of the children, Ruth, Lloyd Wesley and Leona. Then Ida deeded some of her real estate to Ruth, but Ida regained the property in 1968 by filing a suit. Ida also filed an action against her husband, Lloyd, at this same time asking for separate maintenance. Lloyd cross-petitioned for a divorce. Ida was 86 years of age and her husband was 88. The trial court denied the petition for separate maintenance but ordered a division of the remaining property owned by the parties. The cross-petition for divorce was never ruled on. In dividing the property the court stated:

"Instead of these old people being allowed to enjoy their declining years in a normal manner or to reap the benefits of their estate acquired through years of hard work, they have been subjected to constant turmoil, worry, anguish and heartbreak due to the controversy and bickering of their children."

In ordering a division of the property owned by these two old people, the court assigned the following to Lloyd:

"(a)  His bank account in the Swedish-American State Bank of Courtland, Kansas; [$120 to $125]

"(b)  An Undivided One-Half (½) interest in the East Half (E½) of the Northwest Quarter (NW¼), 25-3-5, Republic County, Kansas;

"(c)  Defendant's life estate in the Southeast Quarter (SE¼) 3-34-31, Republic County, Kansas;

"(d)  One-Half (½) interest, or the sum of $7,500.00, of the last $15,000.00 withdrawn from the Capitol Federal Savings and Loan Association of Topeka, Kansas, later deposited in the bank at Hastings, Nebraska, and, thereafter, transferred to defendants Leona Van Vleet and Ruth I. Nelson. The defendants last named are ordered to transfer this amount to defendant, Lloyd William Davis, and judgment is given said Lloyd William Davis against said defendants for this amount."

The following property was set over to Ida:

"(a)  Household goods;

"(b)  Antiques at the farm home;

"(c)  Account in the Scandia Bank; [$300]

"(d)  The 3 Certificates of Deposit in the People's National Bank, Belleville, Kansas; [$12,600]

"(e)  Account No. 3802D in the North Kansas Savings and Loan Association, Beloit, Kansas; [$15,027.82]

"(f)  The home in Scandia, Kansas;

"(g)  The 40 Acres of land in Plaintiff's name;

"(h)  Plaintiff's life estate in the Southeast Quarter (SE¼) 3-34-31, Republic County, Kansas;

"(i) The Hill Lots in Scandia, Kansas;

"(j) An Undivided One-Half (½) Interest in the East Half (E½) of the Northwest Quarter (NW¼), 25-3-5, Republic County, Kansas;

"(k) One-Half (½) interest, or the sum of $7,500.00, of the last $15,000.00 withdrawn from the Capitol Federal Savings and Loan Association of Topeka, Kansas, later deposited in the bank at Hastings, Nebraska, and, thereafter, transferred to defendants Leona Van Vleet and Ruth I. Nelson. The defendants last named are ordered to transfer this amount to plaintiff, and judgment is given plaintiff against said defendants for this amount."

As is apparent from the difference in the amounts of the above divisions of property, Ida received the greater amount and value. The court, in ordering the division of property, found that after this division Lloyd was without sufficient income to support his wife. Lloyd had the income from 80 acres of farm land, accruing interest on $7,500.00 withdrawn from Capitol Federal Savings and Loan Association, and a social security pension of $54.00 per month.

Ida was in failing health and was living in the Republic County extended care home. The court, in ordering the division of property, found that Ida had some income from the property set over to her, interest income from the savings accounts and certificates of deposit, and $27.70 a month coming to her from social security. The court acknowledged that this income would not be sufficient to cover her needs, but stated she could invade the principal of her savings, which would then be adequate. The order dividing the property was signed in October, 1969. Ida continued to live separate and apart from Lloyd until her death.

Ida died testate in January, 1975. Her will was admitted to probate. Under the will Lauren and James were named as sole devisees and legatees. Her husband, Lloyd, who was then 94 years old, elected to take under the laws of intestate succession, and received half the property remaining after payment of expenses and attorney fees. Apparently Ruth, Leona and Lloyd Wesley received nothing from the mother's estate. They had received practically all the gifts of property transferred by Lloyd in 1966 totaling over $175,000.00.

Lloyd died testate in March, 1976. Under Lloyd's will Lauren, James and Lloyd Wesley were bequeathed $100.00 each. The remainder of his estate, including the property coming from the estate of Ida, was devised and bequeathed equally to his daughters, Ruth and Leona.

James, the executor of the estate of Ida, filed a claim against Ruth, the executrix of the estate of Lloyd, for the sum of $24,966.81 which sum consisted of those amounts expended for the support of Ida from her own funds, after the property division and prior to her death, while she was living separate and apart from her husband. The claim was denied in the district court and the executor of Ida's estate appeals to this court.

The threshold question to be decided is: Can a district court in an action for separate maintenance deny the petition for separate maintenance but enter a valid and binding order dividing the property between the parties?

The answer to this question is yes, and lies in K.S.A. 60-1606 which reads in pertinent part as follows:

"If a decree of divorce, separate maintenance or annulment is denied other than for the equal fault of the parties the court may nevertheless make any of the orders authorized by this section for the benefit of the minor children of the parties or *for the equitable division of the property of the parties.*" Emphasis supplied.

This statute clearly authorizes a court to make an equitable division of the property owned by the parties if a decree of divorce, separate maintenance or annulment is denied, other than for the equal fault of the parties. In our present case the court denied any such decree. The denial was not based upon equal fault of the parties, and the court had jurisdiction to decree an equitable division of the property.

In a domestic relations case a division of the property of the parties, when called for by the circumstances, rests in the sound discretion of the trial court. *Clugston v. Clugston,* 197 Kan. 180, 182, 415 P.2d 226 (1966). Such division of the property must be made in a just and reasonable manner. *St. Clair v. St. Clair,* 211 Kan. 468, 498-499, 507 P.2d 206 (1973).

It should be pointed out that since the court did have jurisdiction to divide the property and no appeal was taken from the decree it cannot be collaterally attacked in a later proceeding. *Jayhawk Equipment Co. v. Mentzer,* 191 Kan. 57, Syl. ¶ 2, 379 P.2d 342 (1963).

We turn next to the ultimate question raised in this appeal. Can the wife's executor recover from the estate of the husband for alimony or support not previously decreed but claimed for a period of separation of the parties which preceded the husband's death?

K.S.A. 1979 Supp. 60-1610(*d*) relating to alimony and support states:

"*The decree may award to either party an allowance for future support denominated as alimony,* in such amount as the court shall find to be fair, just and equitable under all of the circumstances. *The decree may make the future payments conditional or terminable* under circumstances prescribed therein. The allowance may be in a lump sum or in periodic payments or on a percentage of earnings or on any other basis. At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the · payment of any portion of the alimony originally awarded that have not already become due, *but no modification shall be made, without the consent of the party liable for the alimony, if it has the effect of increasing or accelerating the liability for the unpaid alimony* beyond what was prescribed in the original decree." Emphasis supplied.

It is apparent that these provisions of the statute originally adopted in 1963 made some sharp changes from the prior statutes. See G.S. 1949, 60-1516. Prior statutes provided for alimony and support of the wife by the husband. Our present law authorizes a decree awarding either party an allowance for future support. In *Herzmark v. Herzmark,* 199 Kan. 48, 53, 427 P.2d 465 (1967), it is stressed that the allowance authorized is for support in the future. It may be awarded to a party irrespective of fault. *Zeller v. Zeller,* 195 Kan. 452, Syl. ¶ 6, 407 P.2d 478 (1965). The provisions for maintenance and support in the statute are to be invoked when one party's needs and the other party's ability to pay are such that support should be ordered. *Moran v. Moran,* 196 Kan. 380, Syl. ¶ 4, 411 P.2d 677 (1966). In *Herzmark v. Herzmark,* 199 Kan. at 55, it is pointed out that an allowance for support is based on need and upon proof of remarriage a prima facie case for termination of future support payments has been established. In the present case the wife was dead when the claim was filed. This claim could hardly be supported based on need. It was not for future support.

The trial court in its decree denying separate maintenance divided the property between the parties and made the following observations:

"It is quite apparent neither the husband or wife are physically able to care for themselves or anyone else. In addition to their physical condition, they have suffered mental deterioration normal or above normal for persons of their advanced ages.

.  .  .  .

"It is quite obvious this elderly couple are incapable of caring for or supporting

themselves. Fortunately, however, their future maintenance is secure. It appears plaintiff has sufficient funds to last during her lifetime. Defendant Lloyd William Davis' future is secure by virtue of limited funds and the assurance, under oath, of his son, defendant Lloyd Wesley 'Jack' Davis, to care for his father. The welfare of these old people is, of course, the paramount consideration of the Court."

A case with facts somewhat similar to our present case was *In re Estate of Crawford*, 155 Kan. 388, 393, 125 P.2d 354 (1942), where the wife filed a claim against the husband's estate for expenditures she claimed her husband "was legally obligated to make for her support." The Crawford court merely observes in closing: "We think that no cause of action was stated and that the demurrer was properly sustained."

In our more recent case of *In re Estate of Sweeney*, 210 Kan. 216, Syl. ¶ 1, 500 P.2d 56 (1972), we point out that periodic payments for support to a divorced wife terminate and end on death in absence of a provision in the settlement agreement, or in the decree, which expressly provides for payments after the former husband's death.

In the present case no decree for support or alimony was sought after the division of property was ordered until the death of the husband. Until such a decree is entered no enforceable liability exists and no amount has been determined necessary. The duty to support continues only during the existence of the marriage relationship. When the husband dies the marriage relationship terminates, and the obligation for support cannot be enforced against the husband's estate. Such obligation is personal between the parties to the marriage and does not survive. Alimony is support money based on need and ability to pay. The foundation for an award of alimony is a spouse's duty to support the other spouse, a duty that ends with death and which cannot then be the basis for an award from the estate of the deceased spouse.

We hold that when a division of property is decreed in a separate maintenance action and no provision for support or alimony is sought until after the death of the parties, a claim for support brought by a personal representative cannot be maintained.

Judgment affirmed.