No. 47,289

LAVADA ANN BERRY, *Appellant,* v. FLOYD THOMAS BERRY, *Appellee.*

(523 P. 2d 342)

Opinion filed June 15, 1974.

*Ray Hodge,* of Beaty, Hodge and Wood, of Wichita, argued the cause and was on the brief for the appellant.

*W. E. Goering,* of Goering, Silver and Clarkson, of Wichita, argued appellee's motion to dismiss.

The opinion of the court was delivered by

HARMAN, C.: This action commenced as one by a wife for separate maintenance. It culminated in divorce granted to the husband, division of property, alimony allowance and an award of child custody, from all of which orders the wife appeals.

Before going to the merits a preliminary matter requires con-

sideration. On May 2, 1974, six days prior to the date set for oral argument of this appeal, the appellee husband filed a motion to dismiss the appeal, and brief in support thereof, on the ground the wife had acquiesced in the trial court's judgment. He had previously long been in default of appearance in this court and remains in default of brief on the merits. This court denied the motion to dismiss but granted leave to renew it at the time the case was presented on oral argument. Appellee's trial counsel appeared at oral argument and renewed the motion.

Nearly all the acts asserted by appellee as constituting acquiescence in the judgment by appellant occurred shortly after the filing of her notice of appeal and prior to the time she prepared and filed her record and brief. Appellee was aware of these acts but stood by while appellant timely processed her appeal and he made no response until shortly before oral argument here. No reason has been suggested for the delay in presenting his position to this court according to the ordinary rules of appellate practice. Under these circumstances we think appellee may be deemed to have waived any right to have appellant's appeal foreclosed upon the ground asserted, and we so hold.

Appellant Lavada Ann Berry and appellee Floyd Thomas Berry were married December 1, 1948. Ten children were born as a result of this union, six of whom were minors at the time of final action in the trial court.

On August 23, 1972, appellant filed her petition for separate maintenance, alleging appellee was guilty of extreme cruelty and gross neglect of duty. Appellee cross-petitioned for divorce on the ground of incompatibility. We consider first those aspects of the case.

In support of her charges of dereliction appellant in general terms expressed dissatisfaction with appellee as a parent and a provider. She also accused him of infidelity but presented no evidence of it. Appellant testified that appellee drank constantly, consuming about eighteen bottles of beer an evening; he had struck her and once knocked her unconscious; she does not believe in divorce.

A married daughter of the parties testified she had seen appellee strike appellant often; he consumed two to three six packs of beer an evening and became drunk from one to three times per week; that appellee remained away from home some nights and had been gone as long as three days.

Appellee testified in his own behalf: He drinks an average of a six pack from 4:00 p. m. to midnight and has patronized bars at private clubs; he has struck appellant in the face; appellant was a bad housekeeper and was always arguing.

The trial court found that standing alone, each of the parties had proven his case and would be entitled to the relief prayed for. The court further found that considering all the evidence, the preponderance was in favor of appellee and he was therefore entitled to a decree of divorce. Judgment was rendered accordingly, which decree is appellant's first target here. Simply put, she asserts she proved her case but appellee did not. She contends evidence of poor housekeeping and arguments cannot be said to constitute incompatibility.

Preliminarily it may be noted that once a decree of divorce is granted the marriage relation is completely dissolved and there is nothing upon which a decree of separate maintenance may operate; hence grant of a decree of divorce to one spouse precludes grant of separate maintenance to the other (*Saint v. Saint*, 196 Kan. 330, 411 P. 2d 683). The first issue to be determined is whether the evidence before the court sufficiently supports the court's finding of incompatibility.

Incompatibility as an additional ground for divorce or separate maintenance came into our law only recently (Laws, 1969, Ch. 286, § 1) and this is our first occasion to deal with it. Our law also is now changed so that either party may, in the trial court's discretion, obtain a decree of divorce or separate maintenance, upon the uncorroborated testimony of either or both of the parties (Laws, 1970, Ch. 240, § 1; now K. S. A. 1973 Supp. 60-1609[d]).

Incompatibility as a ground for divorce in modern American law had its origin in the Virgin Islands, which were purchased by this country from Denmark in 1917. Under Danish law divorce was allowed for reasons of incompatibility, which ground was retained in the Islands' territorial law (see Schulman, *Incompatibility: A "New" Approach to the Dissolution of Marriage*, 20 Kan. L. Rev. 227). Since then several states have adopted that ground so that a considerable body of law on the subject has resulted. Problems have developed, however, because of the impossibility of defining the term with exactness and the difficulty in its application under particular sets of circumstances (see Anno: Divorce—Grounds—Incompatibility, 58 ALR 2d 1218) and it would be of little or no benefit to attempt a review of the cases. The annotator in the fore-

going has supplied this broad definition which seems generally accepted:

"Incompatibility, or 'incompatibility of temperament,' as a ground for a divorce, may be broadly defined as such a deep and irreconcilable conflict in the personalities or temperaments of the parties as makes it impossible for them to continue a normal marital relationship. . . . The conflict of personalities and dispositions must be so deep as to be irreconcilable and irremediable." (p. 1219.)

Webster's Third New International Dictionary states simply: "incompatibility: . . . inability to exist in peaceful harmony; *esp*: lack of adjustment in marriage. . . ." (p. 1144.)

It will be seen that fault, in the sense of matrimonial misconduct, is not an essential element of incompatibility; in fact, one reason for the new concept seems to be that it is designed to relieve some of the acrimony and trauma, as well as the hypocrisy, of securing a divorce based on the theory one spouse is at fault while the other is innocent. Evidence of fault will still be admissible in divorce proceedings where relevant in determining parental custody. And it has been said that a trial court has some discretion where fault exists on the part of the complaining spouse. In *Wegener v. Wegener*, 365 P. 2d 728 (Okla., 1961) it was held:

"Where incompatibility exists as a result of the misconduct of the complaining spouse, the trial court is vested with broad discretion in the weighing of the possibilities of reconciliation and the restoration of a normal marital status and in the granting of a divorce." (Syl. ¶ 2.)

In a case strongly relied upon by appellant it was said that incompatibility does not refer to petty quarrels and minor bickerings which are merely evidence of normal human frailty but refers to conflicts in personalities and dispositions so deep as to be irreconcilable and to render it impossible for the parties to continue a normal marital relationship (*Burch v. Burch*, 195 F. 2d 799 [CA, Virgin Islands]).

As indicated, most of the cases on the subject emphasize that irreconcilableness is an important factor to be considered in granting or refusing a divorce on the ground of incompatibility; indeed some legal lexicographers have given "irreconcilableness" as a synonym for "incompatibility" (see *Poteet v. Poteet*, 45 N. M. 214, 223, 114 P. 2d 91).

Does the evidence here measure up to the legislative standard? We think it does. Undoubtedly the legislature in supplying the additional ground of incompatibility intended to liberalize our di-

vorce laws by broadening the bases upon which it may be granted, notwithstanding the fact Kansas courts have not been illiberal in their interpretation of the traditional grounds for divorce. This is not to say the legislature intended that divorce should be granted perfunctorily or merely upon a party's charge of incompatibility without real proof of the fact. The trial court had both parties before it and heard their stories. It could have required them to seek marriage counseling service available within the locale (K. S. A. 1973 Supp. 60-1608) but did not. It seemed satisfied the parties could no longer live together. Their differences appear to have been of long standing and the record indicated a doubly-proven breakdown of a marriage where both parties wanted to live apart. A relationship characterized by constant verbal as well as physical assault certainly evidences incompatibility. The court could not, over her objection, have granted a divorce to appellant who had petitioned only for separate maintenance (*LeSueur v. LeSueur*, 197 Kan. 495, 419 P. 2d 817). In the type of case presented here a trial court must have some discretion in determining how the interests of the parties and the public welfare are best served (*Poteet v. Poteet*, supra). We cannot say that discretion was abused in the choice made from the alternatives in the case at bar. Consequently our holding is that the evidence before the court sufficiently supported its finding of incompatibility.

Appellant further complains there was an inadequate property division and allowance of alimony.

During their marriage and at the time of trial the parties had acquired a family residence in Wichita, valued at $12,000 and subject to a mortgage of $3,000, household furnishings, a 1972 Chevrolet automobile and a 1967 pickup truck. They owed $685 to one finance company and $420 to another. Appellant testified the home was run-down and in drastic need of repairs; that it needed $5,000 worth of repairs to bring it up to city specifications under "Project Betty."

Appellant was currently employed as a filter operator for Pepsi Cola at $2.40 per hour, with a take-home pay of $147.00 every two weeks. She had previously worked for appellee in helping him to start his ice business. Appellee had been employed as a driver for Pepsi Cola from 1968 until April, 1971, when he became self-employed as a Party Pac ice distributor. An employee of Party Pac testified that according to company records appellant had made a gross profit in 1972 of $27,090.64. Appellee testified his 1972

business expenses were $17,833.84, although his records to verify this testimony were not before the court and were never asked or required to be produced. A son of the parties, who was one of the drivers employed by appellee in the ice business, testified he could have earned as much as $10,000 from his father during the year.

Upon this state of the record the trial court awarded appellant the residence property, the household goods and furniture, and the 1972 automobile. She was ordered to assume the $420 finance company obligation. Appellee was awarded the 1967 pickup truck and his hand tools and was ordered to assume the $685 indebtedness. In addition to child support appellee was ordered to pay appellant alimony in the sum of $85.00 per month, to terminate when the mortgage indebtedness on the family residence awarded to appellant is paid. At time of trial appellant was forty years of age; appellee was forty-eight.

Rules applicable to division of property and alimony have been stated many times and need not be repeated (see *Cool v. Cool*, 203 Kan. 749, 457 P. 2d 60). This court will not set aside awards for either in the absence of a clear abuse of discretion by the trial court.

One of appellant's complaints respecting the property division appears to be bottomed on the state of repair of the family home awarded to her. We have quoted from the record the whole story on this score. Whatever property the parties had and in whatever condition, she was awarded virtually all of it, the ice business alone aside. Another complaint respecting the property division, and the failure to order more substantial alimony, is premised on the court's failure to place a value on appellee's ice business and to ascertain his income. Each side presented its case and rested, apparently satisfied with the evidence adduced. There was no evidence as to the value of appellee's business, assuming it could properly be so termed, other than his income from it, the net amount of which was in serious dispute. Whether this enterprise amounted to anything more than a job and whether it had any value as a franchise or route were not revealed at trial. In the absence of more conclusive facts we cannot say the trial court abused sound discretion in making the orders complained of.

Of the six children who were minors at the time of the divorce, the trial court awarded the custody of the four youngest to appellant and the two older, boys aged sixteen and thirteen, to appellee's custody. Appellant contends the court erred in not awarding the

custody of all six to her. She raises the rule that if children are of tender age they almost of necessity are to be entrusted to their mother's care. This rule, not without its limitations (see *Dalton v. Dalton,* 214 Kan. 805, 522 P. 2d 378), is hardly applicable in view of the fact the boys whose custody was awarded to appellee were sixteen and thirteen—not the tender age contemplated.

Appellant's primary assertion is that appellee's predilection for drink renders him incapable of caring properly for the boys. Both parents are employed so it appears the children will not have the benefit of parental guidance during working hours regardless of which parent is granted custody. The two older boys were placed in appellee's custody at the commencement of this litigation, which continued over a period of several months. During this interim the trial court ordered a juvenile investigation. The record on appeal does not contain the result of that investigation but presumably the trial court had the benefit of whatever investigation was made. In any event the trial court is in the best position to judge whether the best interests of the children are being served and in the absence of a showing of abuse of discretion this court will not disturb an award of custody (*Gardner v. Gardner,* 192 Kan. 529, 389 P. 2d 746). We are unable to find abuse of discretion from the cold narrative of the record presented. It should be remembered an order conferring custody is not a finality in the same sense as a final judgment in an ordinary lawsuit. Under our statute (K. S. A. 1973 Supp. 60-1610 [a]) custody of minor children may be modified or changed at any time whenever circumstances render modification or change proper, but the burden of proving propriety of change of custody rests upon the party requesting the change (*Bergen v. Bergen,* 195 Kan. 103, 403 P. 2d 125).

Finally, appellant asserts error in the trial court's refusal to allow certain of her witnesses to testify in rebuttal. The testimony went largely to misconduct on appellee's part. In *Jacks v. Cloughley,* 203 Kan. 699, 457 P. 2d 175, it was stated:

"A trial judge is vested with considerable discretion in the matter of receiving rebuttal testimony. [Citations] The ruling of the trial court will not be ground for reversal unless it appears that the discretion has been abused to the appellants' prejudice." (p. 703.)

Here again we fail to see any reason for disturbing the judgment. Judgment affirmed.

APPROVED BY THE COURT.