No. 59,805

STATE OF KANSAS, *Appellant,* v. JOAN E. HODGES, *Appellee.*

(734 P.2d 1161)

Opinion filed March 27, 1987.

*Catherine Foster Baird,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellant.

No appearance by appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals pursuant to K.S.A. 1986 Supp. 22-3602(b)(3) on three questions reserved. The defendant was charged with voluntary manslaughter (K.S.A. 21-3403) and was acquitted, and the innocence or guilt of the defendant is no longer in issue.

Defendant Joan E. Hodges shot and killed her husband on July 19, 1983. She was tried on a charge of second-degree murder under K.S.A. 21-3402. The court declared a mistrial after the jury

was unable to reach a unanimous verdict. The defendant was tried a second time for second-degree murder but was convicted of the lesser included offense of voluntary manslaughter. She appealed, and the conviction was overturned by this court in *State v. Hodges*, 239 Kan. 63, 716 P.2d 563 (1986). We held that the trial court had erred in its instructions to the jury regarding self-defense (239 Kan. at 73-74), and further erred in not allowing defendant's expert testimony on the battered woman syndrome. 239 Kan. at 73.

Upon remand, the defendant was tried for a third time in a trial beginning July 21, 1986. An integral part of her defense was that she had shot her husband in self-defense while suffering from the battered woman syndrome. Prior to trial, the State moved for an order permitting the psychological examination of the defendant. The court ordered the examination, finding that the defendant had previously proffered expert evidence concerning the battered woman syndrome and that the examination would provide expert testimony on whether or not the defendant suffered from the syndrome. The psychiatric examination was conducted for the State by Dr. Herbert C. Modlin.

During the trial, the defendant called Dr. Ann Bristow, who presented two theories which may be used to help understand the battered woman syndrome: the learned helplessness theory and the cycle of violence theory. Dr. Bristow presented the results of her interviews with the defendant and described the history of violence in the relationship between the defendant and her husband. Dr. Bristow noted that the experiences of the defendant were consistent with both the cycle of violence theory and the learned helplessness theory. Dr. Bristow also testified as to the state of mind of the defendant and how it was affected by the battered woman syndrome.

The State attempted to rebut Dr. Bristow's testimony by calling Dr. Herbert Modlin. The State's announced purpose in calling Dr. Modlin was to prove that not all experts in psychology agree on the existence of the battered woman syndrome. Counsel for the defense stated that he had spoken with Dr. Modlin, who reportedly told the defense counsel that he did not believe in the existence of the battered woman syndrome. The trial court refused to permit the testimony of Dr. Modlin. The court stated

that the testimony was "an indirect attempt to get into evidence a complete refutation of what the Supreme Court already said should be admitted. The State was arguing, not with this Court, but with the Supreme Court of Kansas."

The State then sought to impeach defendant's testimony by calling Dr. Modlin to testify concerning statements the defendant made to him which were inconsistent with her testimony at trial. The court excluded the testimony of Dr. Modlin altogether, finding that, since the main purpose for which Dr. Modlin interviewed the defendant was to determine whether she was suffering from the battered woman syndrome, his testimony on the limited subject of any inconsistent statements would mislead the jury. The court denied the State's request to proffer Dr. Modlin's testimony. During the closing arguments in the case, defendant's counsel stated, "There is no question that she suffered from the battered woman syndrome. You have no evidence to the contrary."

The case was submitted to a jury which was unable to reach a verdict, and the court ordered a mistrial under K.S.A. 22-3423(1)(d). On August 18, 1986, the court granted the defense's motion for acquittal under K.S.A. 22-3419, finding that there was reasonable doubt any jury could fairly conclude the guilt of the defendant.

The State timely appeals on questions reserved.

The State first contends the trial court erred in excluding the expert testimony of Dr. Modlin regarding the battered woman syndrome. This issue is appropriate for consideration as a question reserved. The consideration of an issue asserted as a question reserved is much more likely where the issue is a new one before the courts. *State v. Holland*, 236 Kan. 840, 841, 696 P.2d 401 (1985). The issue here is whether the prosecution in a homicide trial may introduce expert testimony which is contrary to the battered woman syndrome.

This court recently addressed the issue of the battered woman syndrome in this very case. In *State v. Hodges*, 239 Kan. 63, 73, the court held that expert testimony on the battered woman syndrome may not be excluded from evidence to prove the reasonableness of a defendant's actions in self-defense. The court did not decide that only evidence in *favor* of the battered

woman syndrome may be admitted, which is the interpretation that the trial court gave to our decision in *Hodges*.

In argument before the trial bench, counsel for the defendant made the following observation to which the trial court expressly agreed in ruling to exclude the testimony:

"Now, [Dr. Modlin] has every right to hold those beliefs, but seven judges of the Kansas Supreme Court have said, in effect, we don't care what you think about that because we have found from our research and our investigation that [the battered woman syndrome] has been accepted. Whether or not it is in DSM 3 doesn't amount to a hill of beans as far as I am concerned, because when the Supreme Court *says it is, it is.* . . .

"In our state now they do recognize, they do recognize the battered woman syndrome."

The trial court did permit the State to inquire into Dr. Bristow's ability to identify the battered woman syndrome in given individuals. But, the court stated:

"So far I have not interpreted what [Assistant District Attorney Carr] has been doing is attempting to denigrate the syndrome itself. If I see that occurring, I would stop her, because it is obviously an accepted syndrome by the Supreme Court of Kansas."

The State's announced purpose in calling Dr. Modlin to rebut the testimony of Dr. Bristow was to show that the acceptance of the battered woman syndrome was not unanimous in the field of psychology and that "the post-traumatic stress disorders that Dr. Bristow referred to would not include such a thing as the battered [woman] syndrome." The State added that another reason for Dr. Modlin's testimony would be "to present evidence [that] there are other [personality and behavioral] theories" besides the battered woman syndrome. The State agreed with the court's impression that "all the State is doing is saying they have got another view on the syndrome than what the defendant says."

It should be noted that the State in its brief and in oral argument indicated Dr. Modlin was also prepared to testify that, in his opinion, the post-traumatic stress disorder suffered by the defendant resulted from the shooting rather than the prior domestic violence. The trial court, however, accepted the defendant's contention that evidence contrary to the battered woman syndrome is inadmissible.

Our decision in *Hodges* addressed itself to two issues. First,

the court found that the jury instructions on self-defense were error since they used the term "immediate" instead of "imminent" in reference to the threat of violence facing the defendant. The court found such usage "places undue emphasis on the decedent's immediate conduct and obliterates the build-up of terror and fear the decedent systematically injected into the relationship over a long period of time." *Hodges*, 239 Kan. at 74. See *State v. Osbey*, 238 Kan. 280, Syl. ¶ 2, 710 P.2d 676 (1985); *State v. Hundley*, 236 Kan. 461, Syl. ¶ 3, 693 P.2d 475 (1985).

Second, we found that it was error to deny the defendant's expert testimony on the battered woman syndrome. We identified two requirements relating to expert testimony of scientific evidence. First, the expert evidence must be helpful to the jury. *Hodges*, 239 Kan. at 67 (citing *State v. Reed*, 226 Kan. 519, 601 P.2d 1125 [1979]). Second, the basis of the scientific opinion must be generally accepted within the expert's particular scientific field. *Hodges*, 239 Kan. at 67 (citing *Frye v. United States*, 293 F. 1013 [D.C. Cir. 1923]; *State v. Washington*, 229 Kan. 47, 662 P.2d 986 [1981]). We found both to be present and that the trial court improperly excluded expert testimony on the battered woman syndrome.

The trial court in the present case has misconstrued our previous holding in *Hodges*. We did not hold that the battered woman syndrome had been generally accepted within the scientific field. We held that *the theory* and *the methodology* underlying the battered woman syndrome were generally accepted in the scientific community. Citing *State v. Washington*, 229 Kan. 47, we stated in *Hodges* that "it is the *basis* of the expert's opinion that must be shown to be generally accepted." 239 Kan. at 71. The record before us reveals that the theory underlying the battered woman syndrome has gained a substantial enough scientific acceptance to warrant admissibility.

In *Hodges* we cited with approval the case of *Ibn-Tamas v. United States*, 407 A.2d 626 (D.C. 1979), noting that *Ibn-Tamas* "emphasized the focus is on the general acceptance of a particular *methodology* in the field and not on the subject matter studied." (Emphasis in original.) 239 Kan. at 69. Because the trial court in *Ibn-Tamas* had failed to rule on the general acceptance of the methodology underlying the battered woman syndrome,

the case was remanded for this determination. The trial court found that the methodology underlying the subject had not become generally accepted and the appellate court found the exclusion of the evidence not to be an abuse of discretion. *Ibn-Tamas v. United States*, 455 A.2d 893 (D.C. 1983).

Our decision in *Hodges* consistently distinguishes between the battered woman syndrome and the theory or methodology underlying the syndrome. We nowhere express an opinion upon whether the syndrome itself has become generally accepted, nor did we take judicial notice of the battered woman syndrome or that the defendant was suffering from it.

The cases cited in *Hodges* confirm this view. The Court of Appeals of the District of Columbia in *Ibn-Tamas* stated that the test "begins—and ends—with a determination of whether there is general acceptance of a particular scientific methodology, not an acceptance, beyond that, of particular study results based on that methodology." 407 A.2d at 638. The court continued, stating that the important question is whether an expert's "methodology for identifying and studying battered women has such general acceptance—not whether there is, in addition, a general acceptance of the battered woman concept derived from that methodology." 407 A.2d at 638.

The difference between requiring that the methodology of an opinion be generally accepted and requiring that the opinion itself be generally accepted is, of course, critical. The latter view would permit only expert testimony *favorable* to the battered woman syndrome theory to be admitted, a result nowhere endorsed by this court in *Hodges*. The former view, on the other hand, would allow each side to stand equal. As long as the trial court found the methodologies used to be generally accepted, each side may introduce expert opinion evidence allowing the jury to decide which opinion is more reliable in a particular case.

The case of *State v. Washington*, 229 Kan. 47, is helpful. In *Washington*, the State had introduced expert evidence based upon the "Multi-System" method of enzyme analysis. The defendant provided expert testimony that Multi-System analysis is unreliable. The State then rebutted with another expert who endorsed the Multi-System method as reliable. 229 Kan. at 49-52. Applying the *Frye* test, this court decided the trial court's ruling

admitting evidence on the Multi-System method of analysis was not error. 229 Kan. at 56. But, more importantly for present purposes, the court also noted that "the testimony of various experts supporting and attacking the reliability of the Multi-System analysis was properly placed before the jury for [its] determination as to the weight such evidence should receive." 229 Kan. at 56.

The District of Columbia Court of Appeals, in *Ibn-Tamas*, stressed the distinction between the general acceptance of an expert's methodology (which is a question of law to be determined by the court) and the ultimate reliability and credibility of the expert's opinion (which are questions of fact to be decided by the jury). Were the law to require that the opinion itself be generally in accord with that of other scientists,

"[W]e would shift to the judge such responsibility for evaluating expert credibility that the role of expert testimony might be changed dramatically. For example, if there were conflicting experts, would the judge conclude that neither could testify? That only the more persuasive one could? That a psychiatrist could while a psychologist could not? The judge's role is properly limited to verifying credentials, including findings that the scientific field is generally recognized and that the methodology proffered is generally accepted by the expert's colleagues in the field. The judge is not to take over the jury's function of weighing the persuasiveness of the testimony." 407 A.2d at 638-39 n.24.

The effect of the trial court's misinterpretation of our prior ruling in *Hodges* is to remove from the jury the ability to determine the reliability of a particular scientific opinion. It would permit proponents of a scientific opinion, in this instance the battered woman syndrome, to introduce expert evidence in favor of the opinion and to point out to the jury that the opinion has not been contradicted by the opposing party, as occurred in the present case. But the correct and the straightforward interpretation of *Hodges* would require each party to test the reliability of their experts' opinions before the jury.

The State's second contention that the trial court erred in refusing to permit Dr. Modlin to testify for the limited purpose of impeaching the defendant does not present an appropriate question reserved. The issue is of merit only for the disposition of the present case and would not significantly aid in the correct and uniform administration of the law. Alleged errors which are closely tied to the facts of particular cases do not provide a valid

basis for a question reserved. *State v. Lamkin,* 229 Kan. 104, 621 P.2d 995 (1981). When the alleged error does not involve a novel issue of statewide interest but, instead, deals with factual issues significant mainly for the resolution of the individual case, the error does not present a valid question reserved. *State v. Holland,* 236 Kan. at 841.

The trial judge denied the State's second attempt to call Dr. Modlin because he had already refused to allow him to testify on the battered woman syndrome. The trial court found that the testimony of Dr. Modlin for this purpose would have served only to mislead the jury.

However, even assuming that this court could entertain this issue as a question reserved, it could not be decided on its merits. The only suggested use of Dr. Modlin's testimony at trial, other than that regarding the battered woman syndrome, was to demonstrate allegedly inconsistent statements made by defendant Joan Hodges during Dr. Modlin's examination of her. The only example of such an inconsistent statement suggested by the State is the defendant's failure to mention to Dr. Modlin a trip she testified she took to Las Vegas in the week prior to the death of her husband. Whether the trial court's exclusion of Dr. Modlin's testimony amounts to an abuse of discretion and prejudicial error naturally depends upon a review of the trial transcript to determine the importance of the defendant's statements which the State sought to impeach. But the State has designated a record which includes only matters relevant to the battered woman syndrome: the testimony of Dr. Bristow, counsel's argument before the bench regarding the testimony of Dr. Modlin, and defense counsel's closing argument. The State does not provide this court with Joan Hodges' testimony or the testimony of other witnesses which might bear upon the challenged statements of the defendant. We could not properly determine, on the narrow record presented, whether the trial court's ruling was prejudicial error. An appellant has an obligation to bring forth a sufficient record to support his or her claim. *State v. Yost,* 232 Kan. 370, 654 P.2d 458 (1982), *overruled in part on other grounds State v. Haines,* 238 Kan. 478, 712 P.2d 1211 (1986). Where the appellant presents a limited record which prevents a determination of prejudicial error, the appellant's inadequate

presentation of the record precludes appellate examination of his claim. *State v. Chilcote*, 7 Kan. App. 2d 685, 647 P.2d 1349, *rev. denied* 231 Kan. 801 (1982).

This brings us to the final issue raised by the State. Did the trial court commit error by refusing to permit the proffer of Dr. Modlin's testimony? The Kansas appellate courts have never directly addressed the question of a trial court's refusal to accept an offer of proof. The issue is novel and its resolution would aid in the assistance of the orderly administration of justice and is appropriately presented as a question reserved.

The following exchange took place between counsel for the State and the court out of the presence of the jury:

"MISS CARR: Your Honor, regarding your ruling about the State's rebuttal witness, Dr. Modlin, and not allowing him to testify, for the record we offer State vs. Hayes, 239 Kansas at 443, for your consideration. We would also ask that we be allowed to proffer his testimony outside of the presence of the jury to preserve the record for appeal. Here is that case.

"MISS FOSTER: Or the request be on the record we can offer the testimony.
"THE COURT: Pardon?
"MISS FOSTER: At least the request, to preserve the record, we are requesting we be allowed to proffer the testimony outside of the hearing of the jury.
"THE COURT: That request is denied."

While Kansas courts have never dealt directly with a trial court's refusal of an attempted offer of proof, other jurisdictions have done so. The rule seems firmly established elsewhere that a refusal to permit the making of an offer of proof is usually error. See, *e.g., State v. Harrington*, 349 N.W.2d 758, 760 (Iowa 1984).

In *State v. Moore*, 47 Ohio App. 2d 181, 1 Ohio Op. 3d 267, 353 N.E.2d 866 (1973), the issue presented was similar to that in the present case. The defendant sought to introduce expert evidence based upon a novel scientific technique or methodology (in *Moore*, a polygraph examination), and the trial court not only refused to accept the expert opinion into evidence, it also refused to permit an offer of proof. The appellate court first recognized that the exclusion of polygraph evidence is "essentially the uniform rule throughout the country." 47 Ohio App. 2d at 193. The court continued: "Knowing the state of the law, it certainly was not error for the trial judge to refuse the witness's testimony. It was error for the trial court to refuse the profert into the record of the testimony of the expert witness." 47 Ohio App.

2d at 193. However, since the court upheld the rule excluding polygraph evidence, the court found that, while the trial court had erred in refusing the proffer, it had not committed prejudicial error.

K.S.A. 60-243(c) provides:

"*Record of excluded evidence.* In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness. The offer shall be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged."

K.S.A. 60-405 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

In *State v. Nix*, 215 Kan. 880, 884-85, 529 P.2d 147 (1974), this court stated:

"Here counsel for the appellant made no proffer to the trial court out of the hearing of the jury, of the evidence which was claimed to have been erroneously excluded, and the substance of the evidence excluded was not made known to the trial court in any form as required by K.S.A. 1973 Supp. 60-243(c) and K.S.A. 60-405. Consequently, the appellant is in no position to assert error on either of the two points regarding the exclusion of evidence."

The trial court clearly erred by denying the State's requested proffer of the testimony of Dr. Modlin. The trial judge, by so doing, placed the State in a "Catch-22" situation. The State on the one hand was required by statute to proffer the evidence into the record to preserve its right to raise the issue on appeal but, on the other hand, was prevented from doing so by the trial court's ruling.

The appeal of the State is sustained in part and denied in part.