No. 64,877

MARY F. MARSHALL, *et al.*, *Plaintiffs/Appellees*, v. MAYFLOWER TRANSIT, INC., *Appellant*, and KANSAS TURNPIKE AUTHORITY, *et al.*, *Defendants*.

(822 P.2d 591)

Opinion filed December 6, 1991.

*Hal D. Meltzer*, of Turner and Boisseau, Chartered, of Overland Park, argued the cause and was on the brief for appellant.

*Charles S. Fisher, Jr.*, of Fisher, Cavanaugh & Smith, P.A., of Topeka, argued the cause, and *Patrick C. Smith*, of the same firm, was with him on. the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: After a multi-vehicle accident on the Kansas Turnpike caused the death of Thomas Marshall, Sr., his family filed a wrongful death and survival action. All of the defendants settled with the Marshalls prior to trial except Mayflower Transit, Inc. (Mayflower). The jury awarded $2,914,087.27 and attributed 30 percent of the fault to Mayflower and 5 percent to Marshall. The verdict was reduced pursuant to K.S.A. 1986 Supp. 60-1903 and Mayflower's responsibility ultimately was set at $688,226.18. The amount of damages is not in dispute.

Mayflower contends the trial court erred in the manner it required proffers to be made and in excluding the testimony of Mayflower's accident reconstruction expert, Kenneth Razak, and its two experts concerning paint, Mark Boese and Harry Wachob.

The accident involved a series of individual and multiple collisions among eight westbound vehicles (five semi-trailer trucks and three cars) on the Kansas Turnpike. The. accident occurred during a snowstorm, and the highway was slick and hazardous. The accident will be described in greater detail as the issues are discussed.

The primary issue at trial was the percentage of fault attributable to the various drivers. The main thrust of Mayflower's defense was that most of the damage to Marshall's car and Marshall's injuries were caused when Marshall's car collided with the

Earl Pile Trucking Co. tractor-trailer being driven by Roy Hamill and when the Marshall car was hit by a Frito-Lay tractor-trailer driven by Marlin Crouse, at a time when the Marshall car was against the Pile trailer's tandem wheels. Mayflower hoped to prove through Razak's testimony that the collision between the Mayflower tractor-trailer and the Marshall car occurred at a low speed and caused minimal damage to the Marshall car.

The two paint experts' testimony would have supported Razak's contention that the Frito-Lay tractor struck the Marshall car, as the Holton Livestock truck driver, LeRoy Dick, testified. The Frito-Lay driver testified he struck the Pile trailer, and that testimony was supported by the plaintiffs' paint expert, who testified that the paint on the bumper of the Frito-Lay tractor came from a trailer and not an automobile.

### 1. Proffer of Razak Testimony

Mayflower maintains it repeatedly asked to make a proffer of Razak's testimony in question and answer form, but the court ruled that Razak's deposition would serve as the proffer. Mayflower argues that the deposition could not serve adequately as an offer of proof because it was not taken for the purpose of preserving testimony. The deposition was taken about a year before the trial during the normal course of discovery, and, as such, Mayflower contends it did not include "the heart of [Razak's] trial testimony." Although Mayflower did file a written proffer of Razak's testimony after the trial was over, Mayflower claims even the written proffer was "not a fair substitute for Mr. Razak's actual answers on the highly technical mathematical, and complicated physical and analytical topics involved."

Mayflower correctly cites *State v. Hodges*, 241 Kan. 183, Syl. ¶ 3, 734 P.2d 1161 (1987), for the proposition that if a trial court determines certain expert testimony is not admissible, "it is error [for the trial court] to refuse a proffer of that testimony into the record." In *Hodges*, the trial court refused the State's request to proffer its expert's testimony. 241 Kan. at 185. Here, the trial court admitted Razak's deposition as an offer of proof and also allowed Mayflower to submit written proffers regarding the excluded testimony of Razak. As the Marshalls point out, a more accurate statement of Mayflower's complaint is that Mayflower

was not allowed to choose the form for making its proffer. The Marshalls also argue it would be unreasonable to require a trial court to stop in the middle of a lengthy trial to allow the defendant to spend as much as a day and a half presenting a proffer in question and answer form.

We previously have considered the sufficiency of a proffer. In *Carrick v. McFadden*, 216 Kan. 683, Syl. ¶ 3, 533 P.2d 1249 (1975), this court stated that

"[i]n keeping with the requirements of K.S.A. 60-405, a proffer of evidence which has been excluded should make known the *substance* of the expected evidence. A formal offer of proof in question and answer form is not required provided an adequate record is made in some other manner which discloses the evidence sought to be introduced." (Emphasis added.)

The standard for a satisfactory proffer is whether the proffer contains the *substance* of the excluded testimony.

The trial court was exposed repeatedly to the proposed testimony. The court read Razak's deposition. Prior to trial, Mayflower's response to the Marshalls' motion to exclude Razak's testimony outlined Razak's testimony. Additionally, the trial court heard oral arguments on the matter. The trial court reserved judgment on the motion until after testimony from other witnesses was presented. The trial court briefly allowed the parties to present their positions once again before refusing to allow Razak to testify. The trial court, as does this court, understood the substance of and the basis for Razak's proposed testimony.

The record amply supports a finding that the trial court and this court were informed of the substance of the excluded testimony. Although a verbatim accounting of the excluded testimony in question and answer form is not required, the record does not indicate that the trial court limited what Mayflower could include in the written proffer. If Mayflower's proffer was incomplete, it is because Mayflower did not utilize its opportunities to inform the court of the substance of the proposed testimony.

## 2. Proffer of Paint Experts' Testimony

Mayflower makes the same arguments concerning the two experts who would have testified concerning paint examinations they made. We reach the same conclusions for the same reasons set forth above. In addition, the trial court asked if further proffers

by Mayflower could be handled by written statement. The trial court then granted Mayflower's request that further proffers be in the form of oral statements. When the opportunity arose at the conclusion of the trial to make an oral proffer, Mayflower stated it would submit a written statement. In its motion for a new trial, Mayflower again declared it had been denied the opportunity to make a proper proffer. The issue was discussed further at the hearing concerning Mayflower's motion.

The trial court was aware of the proposed testimony of Boese and Wachob. Mayflower had an opportunity to submit any type of proffer it wished (other than stopping the trial for a question and answer proffer). Here, the trial court and this court are aware of the substance of the excluded testimony and the basis for the testimony. Having examined Mayflower's proffers, it is hard to imagine the excluded evidence being presented in a more favorable form.

### 3. Exclusion of Boese and Wachob Testimony

Trial courts have wide latitude concerning the admission of impeachment testimony. An appellate court will not reverse a trial court's ruling excluding testimony unless the trial court has abused its discretion, resulting in prejudice to the party whose testimony was excluded. See *Ellis v. City of Kansas City*, 225 Kan. 168, 176, 589 P.2d 552 (1979); *Berry v. Berry*, 215 Kan. 47, 53, 523 P.2d 342 (1974).

While Frito-Lay was a party to the action, it hired an accident reconstructionist, A. O. Pipkin, Jr., who in turn hired Edward Cox to analyze paint samples. Cox testified at trial that paint on the front bumper of the Frito-Lay tractor came from a trailer and not an automobile. Mayflower sought to admit the testimony of Mark Boese and Harry Wachob to rebut Cox's testimony. Both Boese and Wachob are knowledgeable in paint sample analysis by spectrograms. They performed the same test as Cox did on the paint samples taken from the bumper of the Frito-Lay truck, but they did not arrive at the same conclusion as Cox.

The trial court was not persuaded by Mayflower's claim of surprise or its claim that the spectrogram analysis had been concealed. The court found that if Mayflower was surprised by Cox's testimony, it was because Mayflower had not exercised due dil-

igence. Mayflower participated in the Pipkin deposition on February 11, 1989, and was put on notice that Cox would be analyzing paint samples and generating a report. The court commented upon the fact that Mayflower chose not to depose Cox. It was Mayflower's fault that it did not know the substance of Cox's testimony until the trial. Mayflower also had notice that Cox could be testifying because the Marshalls had listed all of Frito-Lay's witnesses, including Cox, as their witnesses.

Based on the record before us, we cannot say the trial court abused its discretion in refusing to allow the two witnesses to testify.

The Marshalls also argued that if the trial court abused its discretion in excluding the testimony of Boese and Wachob, Mayflower suffered no prejudice. Although Cox testified that the paint on the Frito-Lay truck's bumper indicated that the Frito-Lay vehicle did not strike the Marshall car, the jury was not convinced. The jury allocated 35 percent fault to Frito-Lay. Erroneous exclusion of evidence is not grounds for reversal unless it affects a party's substantial rights. See K.S.A. 60-261. Thus, even if the trial court abused its discretion in excluding the testimony of Boese and Wachob, the error was harmless. Mayflower's substantial rights were not prejudiced.

### 4. Exclusion of Razak Testimony

Mayflower sought to call as an expert witness Kenneth Razak, a consulting engineer, who for many years has testified as an accident reconstruction expert. The trial court refused to permit Razak to take the stand.

K.S.A. 60-456(b) and (d) govern the admission of expert testimony:

"(b)  If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

. . . .

"(d)  Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

"Expert opinion testimony is admissible if it will be of special help to the jury on technical subjects [with] which the jury is not familiar or if such testimony [will] assist the jury in arriving at a reasonable factual conclusion from the evidence." *Sterba v. Jay*, 249 Kan. 270, 282, 816 P.2d 379 (1991); *Falls v. Scott*, 249 Kan. 54, 63, 815 P.2d 1104 (1991). "The basis for the admission of expert testimony is *necessity*, arising out of the particular circumstances of the case." *Falls*, 249 Kan. at 63. (Emphasis added.) "[If] the normal experience and qualifications of jurors permit them to draw proper conclusions from [the] given facts and circumstances, expert conclusions or opinions are not necessary." *Sterba*, 249 Kan. at 282-83; *Falls*, 249 Kan. at 63. Obviously, the trial court has considerable discretion in determining whether to permit expert testimony.

Prior to trial, the Marshalls filed a motion to exclude Razak's testimony. The Marshalls contended that Razak's opinions and conclusions were preliminary, and despite several requests for Razak's final opinions, none had been forthcoming. Moreover, according to the Marshalls, Razak's opinions did not address subjects that would aid the jury's technical understanding. Additionally, the Marshalls argue that Razak's opinions would not help the jury arrive at reasonable factual conclusions because his opinions contradicted eyewitness testimony, particularly the testimony of Raymond Hammonds, the driver of the Mayflower vehicle.

The trial court determined that Razak's opinions were sufficiently final and did not exclude Razak's testimony because it was preliminary in nature. The trial court took the Marshalls' motion under advisement. At trial, the judge stated, in pertinent part:

"THE COURT: . . . [T]here's the matter of this Razak expert witness, and I told counsel I would make a ruling on that later on after I heard more of the evidence. . . . I have some problems with allowing him to testify. And that is based upon the supreme court's ruling and language in [*Massoni v.] State Highway Commission*, [214 Kan. 844, 522 P.2d 973 (1974), *overruled in part* by *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423 (1978)]. . . . I think that when you read that case closely, that's what they're saying. This is the kind of case that doesn't need any expert witnesses to confuse matters when the evidence is as we have it in this particular case as to what happened and where—who hit who. . . . [F]rom what I've heard up to this point, there hasn't been anybody testifying in a manner that would support the testimony of Mr. Razak.

"MR. MELTZER [Counsel for Mayflower]: Your Honor, Mr. Razak's testimony is supported by the physical facts at the accident scene. He doesn't need and doesn't rely on eye witness testimony. And the supreme court of this state has said that an accident reconstructionist is entitled to testify. They cannot weigh the testimony of witnesses. He's not going to weigh somebody's testimony in that regard. He is going to take the photographs from the scene of the accident, the measurements taken by the highway patrol, and put all that together . . . the damage patterns that are involved. Those are the exact things that [*Massoni*] and [*Lollis*] say the courts permit experts to testify utilizing those things to come to opinions and conclusions. What they don't allow experts to do is to take this witness's testimony and [that] witness's testimony and throw it together and come up with a scenario in that regard. . . . [Razak] is going to be using the physical facts from the scene to construct the accident in that regard, and to show—and with the damage patterns to establish the impacts, where the impacts occurred on the vehicles, and the relative forces involved. . . .

. . . .

"THE COURT: . . . [W]hat is he doing to the testimony of the driver of the Mayflower truck who said he nailed this car, and what is he doing with the testimony of the Frito-Lay truck driver who said he missed him? . . . Isn't [Razak] weighing the testimony? . . . I think the [*Massoni*] case is saying if we got enough people at the accident scene who—and there were tons of pictures taken . . . ground level photographs, aerial photographs. There were many witnesses who saw what happened. We don't need an expert to come in here and testify to confuse the jury that they can take and listen to the testimony of the . . . lay people here. . . . [T]here's nothing technical about a car wreck. . . . [I]t's human perception, what they see. And the jury's got to figure it out from that. . . . [T]here isn't any testimony here that would support what Mr. Razak said. In fact, I need to make a closer review of . . . his basis [for] forming his opinion and foundation for it, because it appears to me that it's a bit lacking there after I went back over the deposition.

. . . .

"THE COURT: . . . [W]hat I think this [*Massoni*] case says is the supreme court said if there's plenty of people there, it's not a technical matter. We don't need any experts coming in and befuddling their minds. Let them hear the people who were there and testified who said it, and they can decide what happened."

The next morning the trial court ruled that Razak's testimony was inadmissible. The trial court found that, under the facts of *this* case, accident reconstruction testimony was not necessary. Additionally, the court noted the lack of foundation upon which Razak's opinions were based and the testimony's bearing on the ultimate issue.

"THE COURT: . . . [M]y interpretation of the [*Massoni*] case . . . requires me to preclude anything under this fact situation, any testimony from traffic reconstruction experts. And I continue to hold that opinion. . . . Mr. Razak in this case would certainly, as far as the issue that's left to be decided here, would be testifying to that ultimate issue. And I think the [*Massoni*] case makes it clear that when you have a situation such as we have here that there's no need to bring in those kinds of people. And to me that makes sense. And in addition, I would further say that based upon my reading of the deposition and the state of the foundation of Mr. Razak's knowledge at the time his deposition was taken, he's incompetent to testify anyhow, because he didn't have enough facts and knowledge about the case to form such a—such an opinion, and he indicates as much in his testimony as far as I'm concerned. So, I would disallow his testimony on both of those bases."

At the hearing on Mayflower's motion for a new trial, the trial court again commented upon the sufficiency of the foundation.

"THE COURT: . . . But here they were—there were all kinds of people who were witnesses—eye witnesses to this within—within several feet of all this happening. And I don't think when—even the evidence of the Mayflower truck driver was that while initially [he] said 35, I think at the time he hit [the Marshall] car dead center, later dropped it down to 25 miles an hour at the time he hit this car, without a question in his mind that he hit the car 25 miles an hour, that a reconstruction expert could come in and say the relative impact was five miles an hour. I mean, this fellow was sure he hit it and so was the Frito-Lay guy. And I—I think that that's a perfect example of why that rule is, and that this individual shouldn't be allowed to come in and testify in that manner. . . . I don't think he had sufficient foundation upon which to form an opinion. And I think his opinion is the best evidence of that when looked at in the light of all the testimony of all the other witnesses."

On appeal, Mayflower argues that the trial court erred in excluding Razak's testimony.

"It is a well-established rule in Kansas that the admissibility of expert testimony is within the broad discretion of the trial court. A party claiming an abuse of trial court discretion bears the burden of showing abuse of discretion. [Citations omitted.] The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision." *Sterba*, 249 Kan. at 282-83; *Falls*, 249 Kan. at 63; see *Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 259, 815 P.2d 550 (1991).

In *Massoni v. State Highway Commission*, 214 Kan. 844, 522 P.2d 973 (1974), and *Lollis v. Superior Sales Co.*, 224 Kan. 251,

580 P.2d 423 (1978), this court specifically addressed the scope of admissible expert opinion testimony in vehicle negligence cases.

In *Massoni*, the plaintiffs filed a suit for wrongful death, personal injury, and property loss against the driver of the other vehicle involved in the head-on collision and the state highway commission. The jury found for the defendants. On appeal, this court found reversible error.

A majority determined expert evidence was inadmissible because "the matters at issue were not sufficiently beyond the common knowledge of ordinary persons that the opinion of an expert would be helpful to the jury." 214 Kan. at 851. This court held the issues were not complicated or technical. The lay jury had the requisite experience and qualifications to understand and to decide the case. "Diagrams, charts and aerial photographs depicting the scene and establishing pertinent measurements were presented to the jury." 214 Kan. at 851. The court particularly noted that five eyewitnesses to the accident testified concerning the positions and the speed of the vehicles involved in the accident.

In *Lollis*, a motorcyclist filed a personal injury suit against the driver of a beer truck after an accident involving both parties. The trial court allowed the police officer to testify as an expert concerning contributing factors to the accident. On appeal, the Supreme Court concluded that the officer's testimony was inadmissible.

This court held that "there was insufficient factual data to serve as a foundation for the officer's conclusions." 224 Kan. at 260. We noted that at the time the officer testified neither the motorcyclist nor the driver of the beer truck had testified. The officer based his testimony "only on what he actually observed at the scene *and* what he was told at the scene by the [driver of the beer truck]." 224 Kan. at 257. The officer only knew one side of the story; he testified he had not spoken with the motorcyclist (the motorcyclist was taken to the hospital immediately after the accident). According to the court, the officer either weighed and rejected or ignored the motorcyclist's version of the accident.

In *Ratterree v. Bartlett*, 238 Kan. 11, 707 P.2d 1063 (1985), this court again addressed the scope of expert testimony in vehicle

negligence cases and reaffirmed the two-part test established in *Lollis*: "[O]pinion evidence by investigating police officers concerning physical factors of an accident is admissible when a proper foundation for such conclusions is presented and the conclusions are the proper subject of expert testimony." 238 Kan. at 15.

Under the facts of *this* case, a reasonable person could agree with the trial court that the testimony of an accident reconstruction expert was not necessary. Several eyewitnesses testified regarding the speed of the vehicles involved in the accident, the condition of the highway, and the weather conditions, including visibility. Most of the drivers involved in this multi-vehicle collision testified. Their testimony encompassed the speed and the approximate locations of the vehicles as well as the drivers' perceptions at the time the accident was occurring. Three highway patrol officers, who investigated the accident, testified. The evidence at trial also included the official highway patrol accident diagram, portraying the final location of all vehicles involved in the collision. Additionally, pertinent measurements were listed. Numerous photographs of the vehicles and of the accident scene were admitted into evidence.

Mayflower argues that the trial court "cited *Massoni* for the proposition that traffic reconstruction experts as a class were forbidden." Mayflower takes the statement out of context. What the trial court actually stated was that *this* fact situation precluded the testimony of this accident reconstructionist.

Mayflower maintains the trial court "interpreted *Massoni* to rule out the use of expert testimony where there were eyewitnesses to a vehicle accident." Additionally, Mayflower argues, "[T]he trial court stated that, as a categorical matter, 'there's nothing technical about a car wreck. It's what—it's human perception, what they see.' " The record reflects the trial court stated that it thought "what this [*Massoni*] case says is the supreme court said if there's plenty of people there, it's not a technical matter. We don't need experts coming in and befuddling their minds. Let them hear the people who were there and testified who saw it, and [the jury] can decide what happened." The trial court was not concerned merely with the quantity of witnesses; the court was concerned with the quality and the nature of the evidence as well as the foundation for the expert testimony.

Additionally, Mayflower states that the "supreme court of this state has said that an accident reconstructionist is entitled to testify." Mayflower is taking the court's statement out of context. In *Lollis*, the Supreme Court discussed *Spraker v. Lanklin*, 218 Kan. 609, 612, 545 P.2d 352 (1976), and noted that this court frequently has approved the admission of opinion testimony from accident reconstructionists. The court's *next* sentence qualifies this statement: "We further observed that the opinions of experts may be helpful to a court or jury in motor vehicle cases *particularly where there are no eyewitnesses to a collision.* However, such opinions must be based on reasonably accurate data available at the scene." 224 Kan. at 258. (Emphasis added.)

Whose fault or negligence caused or contributed to a vehicular accident is not beyond the common knowledge of ordinary persons. Although the facts of the multi-vehicle accident here were complex, the facts were not too complicated or technical for the lay juror to understand. As in *Massoni*, the jurors here had access to numerous diagrams and photographs depicting the accident. As in *Massoni*, the jury here had the testimony of eyewitnesses who testified concerning the positions and the speed of the vehicles involved in the accident. Because of the abundance of evidence, the jury could arrive at a reasonable factual conclusion without the help of expert accident reconstructionists. We are unable to say the trial judge abused his discretion in so holding.

The trial court also held that Razak's testimony lacked the proper foundation. Mayflower argues this was error.

Mayflower contends that the trial court misread K.S.A. 60-456(b)(1) as requiring an expert witness to read the depositions of other witnesses. Mayflower insists it complied with the foundation requirements required by statute for Razak's testimony. Razak relied upon several sets of photographs, including photographs taken by the Kansas Highway Patrol, photographs counsel had given him, and photographs he requested be taken; the Kansas Highway Patrol accident report that included a dimension diagram; and several consultants' reports, including a survey report.

In support of its argument that Razak met the statutory foundation requirements, Mayflower alleges that although Razak had not read any of the depositions connected with this case at the

time of Razak's deposition, "counsel had discussed information contained in the depositions with [Razak]. . . . [F]urthermore, . . . Razak testified that the testimony of other witnesses had been made known to him by counsel." When deposed, however, Razak said his conclusions or opinions were *not* based upon counsel's recounting of the depositions.

We do not decide this issue based on what is necessary to lay a foundation for an accident reconstruction expert to testify. Nor do we mean to imply that an accident reconstruction expert's testimony must be consistent with testimony of eyewitnesses. We decide this issue solely on whether a trial court abuses its discretion based on the facts before it in determining whether a sufficient factual basis is present to support the expert's opinion. When a trial judge perceives an expert's testimony is inconsistent with physical facts and seemingly reliable testimony, a trial court does not abuse its discretion in holding a lack of foundation for a conclusion.

Here, Razak was trying to convey that Mayflower's collision with the Marshall car was at a speed differential of three to four miles per hour. As we view the record, which is the same as the record the trial court had before it, several things were wrong with the foundation for Razak's opinion.

Razak had prepared large photographs depicting the accident sequence, the angles of impact, how the damage was inflicted to the various vehicles, and the vehicles' paths before and after the collision.

The Kansas Turnpike runs east and west where the accident occurred. The westbound lanes are north of the eastbound lanes, and the north ditch has a sharp decline. An accident reconstruction expert determines what happened from where the vehicles and their component parts end up after the accident. It is important that physical placement be correct; otherwise, it changes all angles and directions of force.

Here, Razak placed the Marshall car against the tandem wheels of the Pile trailer. It was important to his theory that the Marshall car be there and be struck from the rear by the Frito-Lay tractor, forcing the undercarriage containing the tandem wheels out from under the Pile trailer. The Pile tractor was in the median (south of the westbound lane of traffic), and the trailer blocked the

passing lane both before and after the Frito-Lay tractor-trailer hit it. Razak placed the undercarriage in the passing lane (south lane) after the accident. This seems significant in showing the direction of force applied to the undercarriage. The Mayflower driver testified that the undercarriage partially blocked the driving lane (north lane); he attempted to drive *between* the undercarriage and the Pile trailer. Thus, by eyewitness testimony and that of Mayflower's own driver, the Mayflower truck attempted to use part of the passing lane in order to miss the undercarriage that was on his right—not on his left as Razak placed the undercarriage. Razak's recreation has the Mayflower truck driving partially on the north shoulder of the driving lane when it struck the Marshall vehicle.

When the driver of the Mayflower truck attempted to go between the trailer and its undercarriage, he saw the Marshall car blocking the hole with its rear end to the north and its front end to the south. Additionally, the car was more in the passing lane (south) than in the driving lane (north). The Mayflower driver did not observe the Marshall car move from the time he saw it until he hit it. Witnesses testified the Marshall car spun counterclockwise after the Frito-Lay truck "went through" the Pile trailer. After the car stopped spinning, it slid north. Thus, all the eyewitnesses' testimony placed the Marshall car as sliding from south to north and the Mayflower tractor and trailer proceeding west.

The direction the Marshall car was going when it was struck is important. The reason it is important is that the Mayflower driver testified he was going 20-25 mph when he hit the Marshall car broadside. A day after the accident, however, he gave a statement saying he was going 35 mph at the moment of impact. Razak was prepared to testify there was a three to four mph difference in the speed of the Mayflower tractor-trailer and the Marshall car at the moment of impact. In order to get a differential lower than the speed the Mayflower tractor-trailer was traveling at impact (20-35 mph), the Marshall car would need to be going west, not north.

We also note Razak's proposed testimony has the Marshall car mostly off the road (north ditch) when it was struck by the Mayflower truck, as opposed to testimony that the car was in the

"hole" between the trailer and the undercarriage, which would have placed it in the center of the two lanes.

Under slightly different facts, many of the inconsistencies (some of which are not mentioned in this opinion) in this case could be said to go to the weight of the evidence. We hold only that under the facts of this case, the trial court did not abuse its discretion in excluding the testimony as not necessary or helpful and that under the facts in the record, there was insufficient foundation for the important parts of Razak's opinion. The trial court did not abuse its discretion in holding the testimony inadmissible.

JAMES M. MACNISH, JR., District Judge, assigned.